NORCUM, Plaintiff in Error, *vs.* D'ŒNCH & RINGLING, Defendants in Error.

1. An outstanding title, which was in existence at the commencement of the suit, is a bar in ejectment, although extinguished by the plaintiff before trial.
2. A testator, in one section of his will, gave his wife a life estate in his mansion house and plantation. In the next section, he willed that " all the resi-

due and remainder" of his estate should remain with her, as long as she continued a widow, to be by her used, and, in certain contingencies, disposed of, for the benefit of herself and her children. *Held*, Her power of disposal extends to the reversionary interest in the mansion house and plantation.

3. Where there is a power of disposal, with a right to enjoy the money arising from its exercise, united in the same person, it is not necessary that the power should be strictly pursued.

4. When an estate is devised to one, with a power of disposing of it absolutely, for the benefit of the heir, there being no express estate for life limited to the devisee, a conveyance by him will pass a fee ; the heir cannot take advantage of his non-compliance with the direction of the will, but, as *cestut que trust*, must compel an observance of the trust by a suit in equity.

5. Although the intent of a testator is to govern, in construing his will, yet, it is not necessary to search out his intent, in order to ascertain whether a power should be coupled with a condition, when none is actually annexed to it.

6. Where a will makes the consent of the executor necessary to give validity to a sale by the widow of the testator, having the power of disposal for the benefit of herself and children, and the executor withholds his consent for a mere selfish reason, a court of equity will, on application, authorize a sale.

## *Error to St. Louis Court of Common Pleas.*

*W. L. Williams*, for plaintiff in error. 1. Mrs. Mackay could not sell the land in controversy at all, under the will of her husband. The words " residue and remainder" in the 7th section do not include the reversionary interest in the mansion house and plantation. Those words are to be taken in their ordinary and not technical sense. 2. If the will gave her power to sell, she did not legally exercise that power. The consent of Soulard and Long was necessary. It was not a power coupled with an interest, but a mere naked power, which did not survive and could not be exercised without full compliance with the conditions. It was not a power to his executors or any one of them *virtute officii*, but to his wife, as such. Sugden on Powers, 142, 165, 179, 181. Hill on Trustees, 165. Authority or power must be referred to in a deed made by attorney, and the necessity for its execution must exist. Sugden on Powers, 181. *Bruce* v. *Duke*, 2 Litt. 247. 3 ib. 411. If it be contended that the after clause of the 7th sec-

tion of the will gives the power to sell, then it was not exercised. The grantor is not presumed to have exercised any power but that referred to in the deed. Sugden on Powers, 201. 3. The life estate in the wife, created by the will, was not a subsisting outstanding title at the trial, to prevent a recovery. The plaintiff had purchased it. 1 Tenn. R. 516. 9 Yerg. 325. Tillinghast's Adams, p. 30. 4 John. R. 202. *Foster* v. *Joice*, 3 Wash. C. C. R. 498.

*F. M. Haight* for same. 1. The sixth section of the will did not give Mrs. Mackay a life estate in the premises. 2. If it did, it was shown, at the trial, to have been extinguished. An outstanding title, to be a bar, must be a present subsisting title when offered in evidence. 1 T. R. 515. 3. Mrs. Mackay had no power to sell the mansion house and plantation. The words "residue and remainder," in the seventh section, are descriptive of the subject and not of the estate. They immediately follow the disposition of the mansion house and plantation. All the property included in those words was to be enjoyed in common by the wife and children, which could not be, if the mansion house and plantation were included. There could be no enjoyment in common of the reversion, because there could be no possession until Mrs. Mackay's death. This shows the intention of the testator. 4. But it is said there is a general power conferred at the latter end of the section, which covers the whole case. This was a power only to be exercised in the event of the second marriage of his wife. It violates a sound rule of construction, to suppose that two powers, for the same object, are conferred upon different persons in the same section. 5. The direction in the fourth clause of the will as to legacies and the payment of them, does not confer a power to sell and convey real estate. 1 Comstock's Rep. 120. If it does, it was not executed. Where there are different powers in the same will, or deed, to be exercised for various and different purposes, the expression of one excludes any implication that the other was executed. 1 Sug. on Powers, 376, and cases there cited. 6. If Mrs. Mackay had

the power to sell, it could only be exercised with the advice of the executors named in the will. What is meant by the words, "by and with the advice?" Do they mean that she shall advise with them, and having asked their advice, is at liberty to do as she pleases? Do they mean, as is contended, a "mere moral influence," but not the prerequisite to the exercise of the power granted? The object is apparent. It was to prevent improvident bargains by a woman, having, it is presumed, not much experience in business. Formalities, essential or otherwise to the execution of a power, if imposed by the donor, are to be strictly complied with. 1 Sug. on Powers, 264, 334, 339. 3 East, 410. Equitable relief against defective executions of powers is never applied to cases of this kind. 2 Hilliard, 562. Sug. on Powers, 94. The doctrine of Lord Mansfield, as reported in Cowper, 260, has been long since exploded. 2 Dyer, 219. The owner of the property may impose any restraint he sees fit, not inconsistent with public policy or moral obligation. His will stands as a reason for his action. 7. It is said that Mrs. Mackay was sole surviving executrix when the power was executed. But the bargain was made during the life of Soulard, and against his consent, and the postponement of the deed, or taking a new one after his death, was a fraud upon the power and an evasion of its provisions, which renders the deed void and inoperative. Again, the will provides for the appointment of executors in the place of those who die or refuse to act. Therefore, the whole doctrine of survivorship is inapplicable. The same reasons apply to the argument from the statute cited. *Townsend* v. *Wilson*, 1 Barn. & Ald. 609. Opinion of Thompson, C. J. in *Franklin* v. *Osgood*, 14 Johns. 527.

*Spalding & Shepley, Geyer & Dayton,* for respondents. 1. The statute law here had always been and was then, that the executors qualifying, or their survivors had power to sell real estate authorized by will to be sold. 1 Ter. Laws, sec. 49, passed 4th July, 1807. Same, p. 411, passed 21st January, 1815. Same, 925, sec. 25, passed 12th January, 1822. 2.

At common law, executors were considered as having the power *virtute officii*, where it was not expressly made a personal trust, if the will authorized a sale of land. 1 Sug. on Powers, 128, 133, 141, 143–4. By the liberality of modern decisions, the power survives to surviving executors. 2 Williams on Executors, 626. 1 Powell on Devises, 243–4, note. 3 Binney, 69. 8 Porter, 380. 2 Greenl. 373. 1 Dev. & Bat. 389. 2 ib. 262. 1 Williams on Ex'rs., 413. 1 Comstock's Rep. 341. Cro. Eliz. 80. 3. The power may be conferred in any words ; the intent governs. If land is directed to be sold by a will, without stating who shall sell, the executor has the power to sell, if he is to handle the fund. 1 Sug. 115–16, 133, 336. Cro. Eliz. 80. 4. The power may be exercised, without any reference to it in the deed or act of execution, and even with a wrong and mistaken reference. The *intent* governs, which may be ascertained from the act itself and other circumstances. 1 Sug. 373, 377, 396, 388, 257. 2 Watts, 185. 2 Hilliard, 564. 2 Bing. 496. 5. Powers, in courts of law, as well as in courts of equity, are to be liberally construed, so as to attain the intent and object for which they were conferred. 11 Johns. Rep. 169. 3 East. 410, at p. 441. 1 Cowper, 266. 2 Sug. 335. Equity relieves against defective execution of power, if there be a consideration. 2 Sug. 94, 95, 100. *Smith* v. *Bell*, 6 Peters, 68. 6. A power, coupled with an interest or with the execution of trusts, survives. *Franklin* v. *Osgood*, 14 J. R. 527. 15 Johns. 346. *Cooper* v. *Given*, 16 Johns. 167. 3 McCord, 29. 10 Peters, 564. 2 Johns. Ch. R. 19. 5 Howard, 233. 7. If *consent* were necessary to the execution of the power in Mackay's will, it was not necessary to insert that consent in the deed, or that the deed should refer to it. 1 Sug. 332, No. 3. 8. In the present case, it was not necessary to prove *consent* of any person to the deed and sale to Rutgers. It was the consent of the *executors*, if any one, that was required, and Mrs. Mackay was the sole surviving one of those qualifying. 2 Powell on Devises, 1 to 5. The first power in the seventh section of the

will is substantially a power to the executors, to be exercised by them *virtute officii*. The last power explains and confirms the first, and shows that it was a power to the executors, herself being one of them. The will does not require the *consent* of the executors to a sale. It merely says, his wife is authorized and *directed* " by and with the *advice* of my executors," &c. Now this advice is required as much for " providing and taking and using" any thing out of the estate, as for selling lands. The inference is, therefore, that the *advice* required was general advice and not consent to each act. She was to consult them and be guided by them, but their consent was not a condition precedent to the validity of each act. In the sixth section of the will, her power is restricted as to the sale of land, and the consent of one of the executors is expressly required ; thus showing that he knew how to express himself when he meant to impose a condition precedent. 9. The last power to sell contained in the seventh section of the will, is clear, and announces the intent of the testator, who was no lawyer and wrote his own will. 10. The purposes for which the sale to Rutgers took place were such as to call the power into operation. 11. Both powers authorized the sale of the land in question, because, 1st, it is not a part of the " mansion house and plantation," and, 2d, if it were, the " residue" comprehends the remainder after her life estate. 12. If the power existed in Mrs. Mackay to sell land for certain purposes, after the death of Soulard, its exercise was not prevented by his refusing to advise in his life time. If the power survived, it was the whole power, and she could do what, in the life time of Soulard, they could jointly have done. The necessities of the family were the same after Soulard's death as before. She was, by the will, the head of the establishment and bound to provide for all the children and keep up the style of living. Soulard did not object to the sale because it was not necessary and proper under the will. His objection was personal to himself, and could not impose any restriction on Mrs. Mackay under the power, when she was the surviving and sole acting

trustee. The land sold for its full value at the time and there was no fraud. 13. The eighth instruction given by the court is correct, because Mrs. Mackay, by the will, had a life estate in the mansion house and plantation, and her deed to Rutgers passed her individual interest, as owner of the life estate. 14. The deed from Mrs. Mackay to Rannells, made since this suit was brought, was properly excluded. It was a quit claim deed and would not enure under the laws of this state, as the case of *Bogy* v. *Shoab*, in this court, decides. 15. If Mrs. Mackay had the power, as an *individual*, not as *executrix*, to sell, then the advice required was not a condition precedent to action.

SCOTT, Judge, delivered the opinion of the court.

This was an action of ejectment, instituted in August, 1848, by Norcum, the plaintiff, against the defendants, for a lot of ground on Park Avenue, in the city of St. Louis. Both parties to the suit derived title to the premises in controversy, through James Mackay, whose claim to them was not controverted. The title of the plaintiff rested on a quit claim deed, whose consideration was ten dollars, executed by Charles S. Rannells, on the 6th June, 1848, who purchased from the heirs of James Mackay; and on a deed from Isabella Mackay, the widow of James Mackay, executed after the beginning of the suit, conveying her interest in the premises, which was a life estate, subject to be defeated upon her second marriage. The consideration of the deeds from the heirs of Mackay to Rannells bore little or no proportion to the value of the lands purporting to be conveyed by them. These deeds all bore date in the years 1846–7. The deed of one of the heirs was executed in a manner so as not to be effectual for the purpose of conveying the interest intended. The defendants derived title to the lot in dispute through Arend Rutgers, who claimed under a deed executed by Isabella Mackay, the widow of James Mackay. This deed was executed on the 5th day of May, 1825, in pursuance (as it purports on its face) to the will of James

Mackay, for the consideration of three hundred and twenty dollars. The following is so much of the will of Mackay as is deemed necessary to be copied, for a full understanding of the questions involved in this case : " *And it is my will that my said wife shall remain in full possession of my mansion house and plantation belonging thereto,* (situate near St. Louis bridge,) *during her natural and single life, but no longer, and that all my children, while single, shall enjoy, in common with her, the benefits of said house and farm.*" (Sec. 7.) " It is my special will and request that *all the residue and remainder* of my estate, real and personal, goods and chattels, of whatever nature, quality or quantity they may be, shall be and remain to and with my said beloved wife, Isabella L. Mackay, while she remains a widow, and my seven children, John Zeno, George Anthony, James Bennett, Eliza Lucy, Catharine Mary, Jane Julia, and Emily Ann ; and that my said wife and all my said children do and shall have and hold the same said property and estate in common between them, for their common use and benefit, during the minority of my said children ; *and my said beloved wife is hereby directed and authorized by and with the advice of my executors, hereafter named, to provide, and take and use out of said property, real and personal, whatever may be necessary and sufficient to support and maintain herself and said children in a plentiful, decent and becoming manner, and no wise inferior to the manner they lived with me, and to give good education to my said daughters, and a classical education to my said sons, and to dispose of as much of said property and estate, real and personal, as will be sufficient to pay and defray all costs and expenses due or accruing, on account of each and every thing done or performed by virtue of this section ;* and when any of my said children becomes of age or gets married, with the consent of my said wife, and desires and requires to get a share of said property, (then, and not till then,) an inventory shall be taken, and appraisement made, under the direction and management of my

executors, hereafter named, of the whole of my said property and estate already mentioned in this section, and which may be remaining at the time, and (after deducting therefrom and saving the necessary expenses and sum to finish the education of my said children, as above specified,) shall be divided into eight equal shares, of which, seven shares shall go to my said seven children, *i. e.*, an equal share to each of them, amd the remaining eighth share shall go to my said wife, Isabella, who shall have and hold the same during her natural and single life, for her better support and maintenance, which share she shall take in such things as may suit her, and my said executors shall sell such part of said estate as may be for the interest of the heirs, and such things as cannot be divided between them, and from and after the day that this division is made, those of my said children who shall remain still with their mother, my said wife, or under her care, shall make to her a reasonable compensation, each of them out of his or her own share, for all expenses she, my said wife, shall be at on their account; but it is my will and request that, if my said wife do marry again, she shall immediately remove from my said mansion house and plantation, and from and after the day of her so marrying, shall have no right to the possession or benefit of said mansion house or plantation, or any part thereof, unless my said children should be disposed to allow her to remain with them in said house, or on said plantation, during their pleasure; and immediately after the day that my said wife shall marry, as aforesaid, I will that my executors shall take all my estate, real and personal, from and out of her possession, (except the property and land which I bequeathed to her in absolute right, as specified in the foregoing section, the sixth,) and if not appraised before, to take an inventory of the whole and keep it safe, or dispose of such parts of it as are perishable to the best advantage, for the benefit of my said children, leaving the real estate to be divided and apportionéd equitably and in equal shares among my said seven children, as they get married or come of age, and to be drawn by lot or otherwise, as may seem

best and just, and all the personal estate also, which remains at the time of taking said inventory, and not included in foregoing section the sixth, shall be equally divided among my said seven children; provided, nevertheless, that my executors, hereafter named, and who may act at the time, shall have power to dispose of as much of the said personal and real estate, at any time, as may be necessary for the good and decent maintenance and education (as mentioned already in this section) of my said children; and in case my said wife do marry again, as aforesaid, I will that my said children shall be taken from her by my said executors, and placed at school or some other good place, except such as they may think proper to leave with their mother, to whom they shall pay a reasonable compensation for their maintenance. And I fondly hope that my said executors will always remember that the charge I leave to them are helpless orphans, and the offspring of a friend and a father, who has not one relation on this side of the ocean to take their part, to guide them in the way they ought to go, to relieve them in their distress, and guard them against a crafty and corrupt world; consequently will act as father to my dear children after I have mouldered in the tomb, see that they are treated with justice and humanity, and brought up with decency, and in principles of virtue, religion and morality."

John Long, Anthony Soulard and Isabella Mackay were appointed executors and executrix of the will, with a power to the survivors to choose a successor to any of them in the event of death. Long renounced and Mrs. Mackay and Soulard qualified as executrix and executor. This will was dated 7th November, 1821, and letters testamentary were granted thereon the 29th April, 1822. Mackay died during the latter part of the month of March, 1822, leaving eight children, all under age. Anthony Soulard died on the 10th March, 1825. The following is a copy of the deed from Isabella Mackay to Arend Rutgers:

"Whereas, James Mackay, in his life time, by his last will and testament, bearing date the seventh day of November, in

the year of our Lord one thousand eight hundred and twenty-one, and recorded in the office of the Probate Court, book A., pages sixty-eight and following, authorized Isabella Mackay, his wife, and executrix, to sell, dispose of, and take such of the property as will be necessary for her support and that of her children, as will more fully and at large appear, reference being had to the seventh section of the said last will and testament; and, whereas, the said Isabella Mackay, executrix as aforesaid, finds it now indispensable, for her maintenance and that of her children, to avail herself of the provisions of the said seventh section : Now this indenture witnesseth, that the said Isabella Mackay, executrix, as aforesaid, by virtue of the power vested in her by said last will and testament, and for and in consideration of the sum of three hundred and twenty dollars, to her in hand at and before the sealing and delivery hereof, well and truly paid by Arend Rutgers, of the county of St. Louis, the receipt whereof is hereby acknowledged, and therefrom and of every part and parcel thereof, the said Arend stands acquitted, exonerated and discharged, she, the said Isabella Mackay, executrix, as aforesaid, hath granted, bargained and sold, and doth hereby grant, bargain and sell unto said Arend, all that certain tract, piece or parcel of land, situate, lying and being south of the city of St. Louis, and containing thirty-three arpens, French measure, and bounded as follows, to-wit : southwardly, by lands of Anthony Soulard, westwardly, by lands of James Mackay's estate, northwardly, by lands of John Mullanphy and Auguste Chouteau, and eastwardly, by lands of John Mullanphy and the road leading from St. Louis to Carondelet, it being part of a larger quantity granted to said James Mackay, as will more fully and at large appear, reference being had to the title papers, concession and survey of two hundred and eighty-two arpens, recorded in the office of the recorder of land titles for the (present) state of Missouri, book B., page (434) four hundred and thirty-four.  To have and to hold the said granted and bargained premises, together with all and singular the

privileges and appurtenances to the same belonging or in any wise appertaining, unto him, the said Arend Rutgers, his heirs and assigns, and to his and their own proper use, benefit and behoof forever. In witness whoreof, she has hereunto set her hand and seal, as executrix, as aforesaid, the fifth day of May, one thousand eight hundred and twenty-five, Isabella L. Mackay, Administratrix. (seal.)

" Signed, sealed and delivered in presence of Peter Ferguson."

Zeno Mackay, the eldest of the children of James Mackay, testified, that in 1824, an officer, by virtue of an execution, seized a favorite female slave, "pretty much all the rest of the slaves having been previously sold." His mother, being much distressed, sent to consult Antoine Soulard, to know what was to be done. He advised, that an application should be made to Arend Rutgers for money. This was accordingly done. Rutgers declined lending any money, but said if Soulard and Mrs. Mackay would sell him some few acres of useless land in the big gully, he would endeavor to raise it. He returned to Rutgers the next day, and informed him that Soulard would not sell, but if he would take a deed executed by his mother alone, he should have the land he wanted. Rutgers agreed to this, and the next day gave him two hundred and fifty dollars, when the witness, his mother and Rutgers went to Leduc's office, where a paper of some kind was drawn up, which was signed by Mrs. Mackay and delivered to Rutgers. The executions, by virtue of which the slave was seized, were satisfied with the money received from Rutgers. Soulard objected to the sale to Rutgers, because he intended to lay out a grave yard on the land he wished to purchase, which was adjacent to Soulard's estate, and he did not want a grave yard under his nose. James Mackay's estate was very much embarrassed at the time of his death. His mansion house below the city, being the residence of his family, was sold under execution and conveyed in October, 1824. After the family removed from the home place, the last chair was sold from them. There was a great

8—VOL. XVII.

pressure in the monetary affairs of the country, during the period of the transactions herein detailed. Real estate in St. Louis was very low. There were a great many forced sales. Confirmed lands, a witness says, were sold for ten cents an acre. The land sold to Rutgers was in a state of nature; it was intersected with gullies and covered with grape vines and brush. On a settlement with the Probate Court of her accounts, as executrix, there was found a balance in favor of Mrs. Mackay. The children all lived with Mrs. Mackay, their mother.

The court refused the following instructions asked by the plaintiff:

" The court instructs the jury that, if they believe the several deeds given in evidence by plaintiff were duly executed, and that Zeno Mackay, Eliza Coleman, Catharine Guion, Julia Bowles, George Antoine Mackay, James B. Mackay, Emilie A. Coleman, Louisa Barker, were the children and heirs at law of James Mackay, deceased, and devisees under his will, they will find a verdict for the plaintiff, for seven-eighths of the premises in question.

" The deed executed by Isabella L. Mackay to Arend Rutgers, given in evidence by the plaintiff, is void, not appearing or purporting to have been executed by the advice, concurrence or consent of the persons named as executors in said will, with the said Isabella L. Mackay, such advice or consent not appearing on the deed or by any written evidence thereof. To make the deed effectual, as a conveyance under the power in the will, it is necessary that the executors named in the will, viz., John Long and Antoine Soulard, should have advised or consented to the sale to said Rutgers and the execution of the deed, at or before its execution.

" Where the will contains a provision for substituting executors for those who die or refuse to act, no power can be exercised by those acting or surviving, without supplying the places of those dead or refusing to act.

" The jury are instructed that the deed of Isabella L. Mac-

kay to Arend Rutgers is void, unless the defendant has proved that Antoine Soulard, who took out letters testamentary, advised or consented to the execution of said deed, at or before its execution.

" If the jury find that Antoine Soulard was dead before the execution of the deed to Rutgers by Isabella Mackay, and did not advise or consent to the same, at his death, the power ceased and could not, therefore, be executed.

" If the jury find from the evidence, that the sale was actually made to Arend Rutgers, in the life time of Antoine Soulard, and without his concurrence and against his consent, and the making of the deed postponed until after the death of said Antoine Soulard, this is an evasion of the requisites provided by the testator to the due execution of the power of sale, and they will find the deed to Arend Rutgers void.

" The jury are instructed that the will of James Mackay, not being probated according to law, and no letters testamentary appearing in fact to have been issued, there was no authority to sell, and the deed to Arehd Rutgers is void.

" When the will contains a provision for substituting executors for those who die or refuse to act, no power can be exercised by those acting or surviving, without supplying the places of those dead or refusing to act.

" If the jury find from the evidence, that there were left eight children of James Mackay, deceased, who are his heirs at law, and that they duly executed and acknowledged deeds to Charles S. Rannells, conveying the land in controversy, and that said Rannells duly executed and acknowledged a deed to the plaintiff for said land, and that said deeds were made and acknowledged before the commencement of this suit, they will find in favor of the plaintiff, as follows, to-wit : " One-eighth part of said land sued for, for each deed of said children of Mackay, so duly executed and acknowledged, excepting the share of Coleman and wife, conveyed by their attorneys, R. J. & J. R. Barrett, as not duly executed, and excepting one-eighth

part of the whole premises in common and undivided, out-standing in E. C. Hutchinson."

"If the jury find from the evidence, that there were left eight children and a wife of James Mackay, who are his devisees, and that they duly executed and acknowledged deeds to Charles S. Rannells, conveying the land in controversy, and that said Rannells duly executed and acknowledged a deed to the plaintiff, conveying said land, and that said deeds were made and acknowledged before the commencement of this suit, they will find in favor of the plaintiff, as follows : " One-ninth part of said land sued for, for each deed of said children and wife of Mackay, excepting the share of Coleman and wife, conveyed by their attorneys, R. J. & J. R. Barrett, as not duly executed, and excepting one-eighth part of the whole premises in common and undivided, outstanding in E. C. Hutchinson."

"If the jury believe from the evidence, that the sale of the land to Arend Rutgers by Isabella Mackay was made for any other purpose than the " good and decent maintenance and education" of the children of James Mackay, the testator, then they are instructed that her deed was void and did not operate to vest the title in said Rutgers.

"If the jury believe from the testimony, that no such reasons as were intended by the testator, as expressed in his will, to operate in inducing his wife to sell, so far as she may be under the will empowered to dispose of any of his real estate, did operate in making the sale to Arend Rutgers, then the deed made by her to said Rutgers was void and inoperative to vest title in him.

"If the jury find from the testimony, that the term " mansion house and plantation belonging thereto, situated near St. Louis bridge," used by James Mackay, in the sixth section of his will, referred to and was intended to include the land sued for here and claimed to be in possession of defendants, then the deed from Isabella Mackay, executrix, was made with-

out authority under the will, and was void as a conveyance of the title of said land to Arend Rutgers."

And gave the following instructions:

1. That letters testamentary on the estate of James Mackay were legally obtained by Isabella L. Mackay and Antoine Soulard.

2. That, under the seventh section of the will of James Mackay, the widow, Isabella L. Mackay, had the power, "by and with the advice" of her co-executors, to sell, for the purposes mentioned in said section, any portion of the real estate not excepted from sale by the sixth section of the will, and that the "mansion house and plantation belonging thereto, near St. Louis bridge," were excepted from sale by said sixth section.

3. That the leading objects of the testator were, to provide for the support and maintenance of his widow and children, and that the will should be liberally construed, so as to accomplish those objects.

4. That a power, executed for a meritorious consideration, as to make provision for a wife and for children, or for the benefit of creditors and purchasers, need not be strictly pursued in its execution.

5. That, as the recital in the deed from Isabella L. Mackay to Arend Rutgers refers to the seventh section of James Mackay's will, for the power under under which she made said deed, the deed will be void, unless made in pursuance of said seventh section.

6. That the power given to Isabella L. Mackay, in said seventh section, survived to her after the death of Soulard, if he were the only executor named in the will who qualified and acted as such, and that, after Long renounced and Soulard died, if no other person qualified as executor, and Isabella L. Mackay was the sole executor or executrix, acting and qualified, at the time of the deed to Rutgers, she had full power to make said deed, for the purposes mentioned.

7. That, in ascertaining whether the "mansion house and

plantation thereto belonging, near St. Louis bridge," were included in the sale to Rutgers, the jury should consider the circumstances existing at the date of the will, and of the deed to Rutgers, and may call in aid the acts done by the testator, and under the will, by the parties interested, as a clue to the intention of the parties.

· 8. That, if the jury find that the land claimed in this suit was included in the plantation belonging to the mansion house of James Mackay, near St. Louis bridge, according to the true intent of said Mackay's will, and that his widow is still living and is unmarried, the plaintiff cannot recover in this suit.

9. That if Isabella L. Mackay sold the land mentioned in her deed to Rutgers, for any other purposes than those mentioned in the seventh section of James Mackay's will, then the deed to Rutgers is void, and that a sale of said land, if not part of the plantation belonging to the mansion house, for the purpose of saving a slave for the use of the family, if the use of said slave was necessary for the purposes mentioned in the seventh section of said will, is within the power given to said Isabella L. Mackay, and that the deed would not, therefore, be void."

Mrs. Mackay had a life estate in the mansion house and plantation thereto belonging. Her deed to Rutgers did not purport to convey any lands she held in her own right. Whether the land conveyed to Rutgers was a portion of the plantation belonging to the mansion house, was a question of fact, whose determination was within the province of the jury.

1. There is no doubt of the correctness of the principle, that an outstanding title, in order to constitute a bar in ejectment, must be a subsisting one. But the question is, when must it be in existence? Must it exist at the commencement of the suit, or is it sufficient to show that it is extinguished at the time of the trial? It is conceived, that the cases of *Hall* v. *Bell*, 6 Metcalf, 433, and *Nash* v. *Stafford*, 10 Met. 194, establish a principle which is opposed to the idea of a plaintiff acquiring or extinguishing an outstanding title, after

suit has been brought, in order to sustain his action. These cases, whose reasoning is founded on general principles, show that a defendant cannot, after suit brought, purchase a title, in order to defeat the action of the plaintiff. The same principle would restrain a plaintiff from recovering, where it appeared that he had no cause of action at the time of bringing his suit.

2. The last clause of the sixth section of the will is in these words : " And it is my will, that my said wife shall remain in full possession of my mansion house and plantation belonging thereto, during her natural and single life and no longer, and that all my children, while single, shall enjoy, in common with her, the benefits of said house and farm." The seventh section, immediately following this clause, declares, " it is my special will and request, that all the residue and remainder of my estate, real and personal, goods and chattels, of whatever nature, quality or quantity they may be, shall be and remain to and with my said beloved wife," &c. It is contended for the plaintiff, that these words do not comprehend the reversionary interest depending upon the life estate devised to the wife by the preceding clause. That, as the estate devised was to be enjoyed in common by the widow and her children, and as there could be no common enjoyment of the reversion, during the life of the widow, it was not the intention of the testator to include the estate depending upon the widow's life interest in the land. The property devised by the seventh section of the will, was not only to be enjoyed, but it was also subject to sale, for the support and education of the family, and, moreover, was to be divided among the children, upon the happening of certain events. In making a partition of the estate among the heirs, in order that it might be final, it was necessary that there should be a division of the reversionary interest. The words residue of the estate, real and personal, of whatsoever nature, quality or quantity it may be, are sufficiently comprehensive to include the reversion ; and as such an estate must be included in the devise, to enable the widow to make a complete partition

among the heirs of Mackay, and as such an interest might be made subservient to the trusts of the will, there is no reason why it should not pass by the general words used by the testator.

It may be conceded that the power of sale entrusted to the executors was only to be exercised in the event of the second marriage of the wife ; and as that event never occurred, the power could never be lawfully exerted by them, as it is not to be presumed that two different agents should be simultaneously empowered to perform the same act. So it may be conceded, that a power of sale was not implied in the direction to pay the pecuniary legacies given by the will.

3. It was next contended by the plaintiff, that the power of sale conferred on Isabella Mackay, the wife, not having been exercised by and with the consent of the executors named in the will, in pursuance to its requirements, her conveyance *is,* therefore, void. In support of this proposition, all the learning in the old books in relation to naked powers, has been brought into requisition, and it was insisted that this doctrine clearly shows the invalidity of the conveyance executed by Mrs. Mackay to Rutgers. The law of primogeniture prevails in England, and has always been favored as the principal means of sustaining one of the estates of the government. Hence powers to executors to sell, as the object of such provisions was to turn the inheritance out of the course of descent prescribed by law, are construed strictly, and the courts laid hold of any pretext to defeat such dispositions, in order that the heir might not be disinherited. In contemplating the refinements with which the courts of England indulged themselves in the construction of such powers, we are struck with the subtlety of the human mind. Some of these refinements would seem justly obnoxious to the criticism of being too curious and overstrained ; such as consisted rather in the formal arrangement of words, than of any thing substantial. Under our system of government, the motive to these refinements never existed. Hence, as early as the year 1807, an enactment

was made which is in force this day, directing that the sale and conveyance of lands and tenements, to be sold in pursuance of a will, shall be made by the executors, or such of them as shall undertake the execution of it, or by the surviving executor, or by the administrator with the will annexed, if no other person be appointed in such will for that purpose, or if the person so appointed shall refuse to perform the trust, or die before he shall have completed it. The comprehensiveness of this provision clearly manifests the indifference with which the general assembly regarded the refinements with which this subject had been overlaid by the English courts. This case is unlike those in which the construction of a mere power is involved, where there is no beneficial interest in the agent or trustee, and the naked power is the sole authority for the act. In England, the heir usually has an interest adverse to that of the beneficiary of the power, and he is the favorite of the law. He can only be disinherited by a strict compliance with the terms of the power, and, in the event of its not being executed, he may be entitled to the estate to which it is annexed. In this conflict of interests, the courts take care that those conditions be strictly complied with, on whose performance the estate will pass from the heir to some other person. In the case under consideration, the beneficiaries of the power and the heirs are the same persons. If the power is executed, the heirs receive the benefit of it. If it is unexecuted, they will enjoy the estate. In the case of a mere power, unless where aided by statute, there is no foundation for its exercise but in its terms. If there is a departure from these, the act must, of course, fall to the ground for the want of authority. But it is quite a different thing, when there is a power of disposal, with a right to enjoy the money arising from its exercise, united in the same person.

4. There is some analogy between the case now under consideration and those in which there is a gift to one by will, with a power of disposition. Here, the estate is directed to be and remain with Mrs. Mackay, during her widowhood, and with her children, to have and to hold in common during their

minority, with a power of disposal for their common support and maintenance. When an estate is devised to one, with a power of disposing of it absolutely, there being no express estate for life limited to the devisee, he takes an estate in fee upon trust, and by this construction, the heir cannot take advantage of the non-compliance with the direction of the will, but as *cestui que trust,* must compel an observance of the trust by a suit in equity. The power of disposition gives the fee to the devisee, and a conveyance by him would pass it. The heirs, in such a case, can only control the conduct of the devisee, through the agency of a court of equity. The fee being in the devisee, would pass by his conveyance. The authorities are ample that the devise of an estate, with a power of disposal, will pass a fee. Here, there is not only a power of disposal, for the benefit of others, but it was to be executed for the benefit of Mrs. Mackay herself. Sugden on Powers, 119, 120, 121. *Rubey* v. *Barnett,* 12 Mo. Rep. 3.

5. We are not prepared to say that the will of Mackay required that the conveyance made by Mrs. Mackay should have been by and with the advice and consent of the executors. The will is very inartificially drawn, and, evidently, the testator labored under a strange delusion, as to the condition of his pecuniary affairs. He had confidence in his wife, and was willing to trust her alone with the management of his family and estate, so long as she remained a widow. The seventh section of the will contains these words : " and my said beloved wife is hereby directed and authorized, by and with the advice of my executors, hereinafter named, to provide, and take and use out of said property, real and personal, whatever may be necessary and sufficient to support and maintain herself and said children in a plentiful, decent and becoming manner, and no wise inferior to the manner they lived with me, and to give good education to my said daughters, and a classical education to my said sons, and to dispose of so much of said property and estate, real and personal, as will be sufficient to pay and defray all costs and expenses due or accruing on account of each and

every thing done or performed by this section." Now the advice and consent of the executors are not necessary in terms to a valid sale of the property by the wife. Her power of disposition, conferred by the word " dispose," is not limited to the property that may be " taken" and " used" by her with the consent of the executors. The power is general, over all the estate, real and personal. In the construction of wills, where the rule, *voluntas stat pro ratione,* prevails, we are not influenced by the principles which control in the interpretation of statutes. Although the intent of the testator is to govern in construing his will, in order to ascertain how he intended that his property should be disposed of, yet, no rule requires that we should search out his intent, in order to ascertain whether a power should be coupled with a condition, when none is actually annexed to it. Because the testator has required that certain acts shall be done only with the consent of his executors, we are not to infer that other acts, although as important in their nature, are to be done in the same manner, although such consent is not in terms required. In a former part of the will, the testator has shown, that when a sale is to be effected, with the consent of his executors, he knew how to make the requirement. The word " dispose" stands at a considerable distance from the provision requiring the consent of his executors to provide, take and use any of the property, and the will appears to have been written without any regard to periods—a whole section making only a single sentence.

6. Had the consent of the executor, Soulard, been necessary to give validity to a sale by Mrs. Mackay, it cannot be denied but that every thing was done by her, required by the will. Soulard was consulted; he had no objection to a sale itself of the parcel of ground conveyed. He did not deny the propriety of selling the lot, at that time of little value, and of no use for the support and maintenance of the family, for the purpose of preventing the sale of a favorite servant, when most of the other servants had been sold. In so numerous a family of small children, servants were indispensable. Soulard's ob-

jection to the sale was entirely personal, and should not have restrained him from yielding his consent. His fear was, that the ground proposed to be sold to Rutgers would be used for a grave yard, and being near his premises, he did not want a grave yard under his nose. The withholding of his consent for such a reason was conduct unworthy of the trust reposed in him by his friend. None can doubt, but that a court of equity, under the circumstances, would have authorized a sale, had application been made for that purpose. There is no foundation for the imputation, that Mrs. Mackay's conduct, in making the sale, was a fraudulent evasion of the power, even had the consent of Soulard been necessary. The urgency of her affairs was such, that time was wanting perhaps to enable her to apply to the courts for assistance. He to whom she had to apply for consent was impressed with the propriety of her course, but raised objections entirely personal, and which should not have influenced his conduct. Under such circumstances, there can be no doubt, that a court of equity would have ordered an execution of the trust, for the purpose of effecting the purposes of the testator as declared in his will. To hold otherwise, would be to maintain, that a court of equity would see an orphan starve, rather than apply his property to his subsistence; for it is to be borne in mind, that Mrs. Mackay and her children would have had the benefit of the property if it had not been sold. There were no third persons who were interested in the execution of the power, and whose rights would spring into existence upon a failure to carry it into effect.

Judging from what we know of St. Louis at this time, we might be disposed to regard Mrs. Mackay's conduct as unwise and imprudent. A quarter of a century ago, few foresaw that St. Louis would be what she is at this day. We look back at times long gone by, and wonder that men did not foresee her future growth. A future generation may make the same observation of us. The question is not, what the land is now worth, but what it was worth at that day, and when the matter is viewed in this light, there is nothing in the record which

shows that Mrs. Mackay did not discharge the trust confided to her with fidelity. Had the land not been sold by her, it would have been sacrificed by the numerous creditors of Mackay. The question now raised grows out of a transaction that has long slumbered. Nothing has impressed the heirs of Mackay with a belief, that they were wronged by their mother. They are not seeking to disturb her acts. They have merely given quit claim deeds for a consideration almost nominal, for the subject of this controversy, and, under the circumstances, we should be entirely satisfied that the law had been violated in the conveyance made by Mrs. Mackay, before we pronounced a judgment, that would disturb rights which have been uninterruptedly enjoyed for nearly a quarter of a century.

Judgment affirmed, Judge Ryland concurring. Judge Gamble did not sit in this case.