CASE 25—EQUITY—NOVEMBER 20, 1880.

# Dohoney, &c., v. Taylor.

APPEAL FROM ADAIR CIRCUIT COURT.

1. It is manifest that the widow of the devisor acquired only an estate for life in the lands devised to her by the second clause of the will.

2. The power given to the executors by the seventh clause to sell and convey any portion of the devisor's estate must be construed with the other provisions of the will.

3. The meaning of the testator is, "the executors are vested with the title to sell certain tracts of land I have directed to be sold, without restriction or limitation; but the land devised to my wife is to be sold *after her death*, and the proceeds distributed as directed by me."

4. His intention was to give her a home for life, and that after her death the land should be sold.

5. The widow had no authority to sell any greater interest than her life estate.

6. There is no evidence that appellants consented to or acquiesced in the sale of the lands by the widow.

I. & J. CALDWELL & WINSTON AND W. P. D. BUSH FOR APPEL-
LANTS.

1. By the second clause of the will, the widow took the 115 acres of land for and during her lifetime, and not in fee.

2. The power given to the executors by the seventh clause of the will to sell decedent's lands cannot have any reference to land devised to the widow, for that would deprive her of her estate in the land, if the executors determined to sell it.

3. The widow as administratrix with the will annexed could have no greater power than the executors appointed by the will, if they had qualified.

4. The will must be so construed as to harmonize all its parts (Daniel v. Thompson, 14 B. Mon., 663; Moran v. Dillehay, 8 Bush, 437), and so as to give effect to all its provisions (Baird v. Rowan, 1 Mar., 217; Morse v. Cross, 17 B. Mon., 740; 3 Met., 159), and so as to carry out the testator's intention (Adie v. Cromwell, 3 Mon., 279; 12 B. Mon., 47; 9 Ib., 323; 4 Maddox's Ch'y Rep., 30; Sugden on Powers, 139, 334; 1 Jac. & Walk., 189; 3 Adol. & Ell., 442; 3 Atk., 117).

RHORER & JONES FOR APPELLANTS.

It is clear that Rebecca Wheat, the widow, has attempted to do what could only be done by an administrator with the will annexed after her death. She had no more than a life estate, under the second clause of the will. This she might have lawfully conveyed, but no more. (Sec. 17, chap. 63, Gen. Stat.)

Dohoney, &c., v. Taylor.

H. C. BAKER, T. C. WINFREY, AND J. R. HINDMAN FOR APPELLEE.

1. The widow, Rebecca Wheat, as administratrix with the will annexed, intended to convey, and did by her deed convey, the fee-simple title to the 115 acres of land to J. G. Taylor. The deed is not made as widow, but in her fiducial capacity.

2. The second clause of the will gave to the widow an absolute interest in the land. Had the executors qualified, undoubtedly they, with the consent of the widow, could have made a complete title to it. She had, as administratrix with the will annexed, the same power. (Sec. 9, chap. 37, Rev. Stat.; Sec. 9, chap. 39, Gen. Stat.; 8 Bush, 62; 3 Dana, 195; 6 *Ib.*, 117; 2 *Ib.*, 80; 7 *Ib.*, 8; 2 Duv., 27; 8 Bush, 602; Gen. Stat., sec. 13, chap. 39; Rev. Stat., sec. 13, chap. 37; 8 Bush, 602; 4 *Ib.*, 32; *Ib.*, 166.)

3. The devisees knew of the sale, and are estopped to question it. (5 J. J. Mar., 569; 3 B. Mon., 175; 6 *Ib.*, 113; 8 B. Mon., 542; 3 Bush, 490; 6 *Ib.*, 530; 4 Mon., 442; 2 Dana, 11; 6 Mon., 505; 12 B. Mon., 494; *Ib.*, 612; 7 *Ib.*, 180; 7 Bush, 27, 44.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The question involved in this case is, did Rebecca Wheat, the widow and administratrix of her husband, have the power to make the sale and conveyance of the land in controversy to the appellee. Her husband left a will, in which he divised, by the second clause, to his wife Rebecca, a "tract of about 115 acres of land, near the town of Columbia; also certain named lots upon which his dwelling and storehouse stood, together with other lots and improvements," and then proceeded to devise to her his household and kitchen furniture, beds, bedding, &c., farming utensils, cattle, hogs, &c., and concludes by saying, "the foregoing mentioned articles are given to my said wife for and during her natural life, and then to return to my estate, except such of it as may be consumed in its use. I give to my said wife, in addition to the before mentioned property, one third of the proceeds of any personal estate which may remain after paying my debts. This last is an absolute gift." The third clause directs, that "after the death of my said wife, it is my will that all of the estate given to her

for life, and which may remain, be sold upon a reasonable
credit, and the proceeds divided as herein directed." By the
sixth clause it is provided, that after the death of the widow
"all of my estate remaining is to be sold, and the proceeds
to be divided into five equal shares," and to pass to his chil-
dren named. The seventh clause vests his executors, or such
of them as qualify, "with full power to sell, and convey a
good title to any part of my estate," and "the title to my
real estate is hereby vested severally in my executors, so as
to enable them, or either of them, to pass the title thereto
to a purchaser or purchasers, but for no other purpose, and
to no greater extent." The testator owned several other
tracts of land that are mentioned in the will, and directed to
be sold by the executors.

The executors named in the will declined to qualify, and
the widow qualified as administratrix with the will annexed,
and sold the land devised to her, or a part of it, to the appel-
lee, and placed him in possession. The devisees claiming
the land in remainder, the appellee filed this petition in
equity against the widow and devisees, alleging that the
conveyance from the widow was by virtue of the will, and
intended to be absolute, and the devisees were asserting title.
He asked a construction of the will, and that his title be
quieted, claiming the right in the administratrix to sell the
fee. The will being filed with the petition, a demurrer was
interposed, upon the ground alone that the widow held only
a life estate, and had no power to sell under the will or by
virtue of her qualification as administratrix with the will
annexed. An amended petition was filed during the prog-
ress of the litigation, in which it is alleged that the adult
heirs knew of the sale made by the widow; that the land
sold for its full value, and they have received the purchase

Dohoney, &c., v. Taylor.

money. The appellants, the devisees, admit their knowl-
edge of the sale, and say the widow had the right to sell
her life estate, but deny receiving any part of the proceeds
of sale, or any moneys from the widow, knowing that she
had received it from the appellees.

We think it manifest that the widow acquired only a life
estate in the lands devised to her by the second clause of
the will, and any other construction would divest the widow
of any interest in her husband's estate, except the small
quantity of personalty devised to her for life.

The power given the executors by the seventh clause of
the will to sell and convey any portion of his estate, and
vesting them with the title for that purpose, must be con-
strued with the other provisions of that instrument, and
does not conflict with a restriction of this power to a sale
of the land devised to the widow, after the termination of
her life estate. The meaning of the language used is, that
you are vested with the title to sell, as herein directed, cer-
tain tracts of land I have directed to be sold, without any
restriction or limitation; but the land devised to my wife is
to be sold after her death, and the proceeds distributed as
directed by me. It may be argued, however, that by the
same clause of the will, after devising the land and personal
estate to his widow, the devisor intended to give her a life
estate only in the personal property therein mentioned, as
he says: "The foregoing mentioned articles are given to
my said wife during her natural life, and then to return to
my estate, except such as may be consumed in its use."
This evidently was intended to embrace the land as well as
the personalty. The devise of the land is included in the
same clause, and the testator, after creating the life estate in
the wife, proceeds in the same provision to say: "I give to

my said wife, in addition to the *before mentioned property*, one third of the proceeds of my personal estate remaining after the payment of debts. This last is an absolute gift."

Then follows the third clause, directing that *all of the estate given to* his wife for life, and which may remain, be sold on a reasonable credit, and the proceeds divided as hereinafter directed. This was certainly not intended to apply alone to the household furniture and farming implements, &c., devised to the wife, but embraced the land and all other property devised by the second clause. The testator did not intend to vest the executors with the power to deprive his wife of the use of this land, or make disposition of it whenever in their opinion the interests of the devisees demanded it, but designed it as a home for the wife, requiring it to be held until her death, and then sold, and the proceeds divided between his children and grandchildren in the proportions directed by the will. Such being the proper construction of the will, the widow could only sell her life estate, and as administratrix of the will annexed never could have distributed the fund, because the time for distribution did not arrive until after her death; nor do we see why a testator cannot limit or control the executor as to the time at which his estate may be sold and the proceeds distributed. He doubtless created this life estate in the wife for her benefit alone; still he may have conceived the idea that it would secure to his heirs and distributees a part of his estate at least at her death, and that the postponement of its enjoyment might result to the advantage of the distributees. This reasoning, however, is not necessary to determine the question raised. Here it is endeavored to be maintained that one who could in no event exercise the power to sell at the time provided by the will, can neverthe-

Dohoney, &c., v. Taylor.

less exercise such a power, and pass the title before author-ized by that instrument. The right to sell and distribute was vested in the executors after the death of the widow, who was qualified as administratrix, and neither the executors, if they had qualified, or the widow, in her representative capacity, could sell until that period arrived. It is true they might sell by the direction of the devisees, and the latter would be estopped to question the title of the purchaser, not because the personal representative had the right to sell under the will, but from the fact that the parties alone interested had directed the sale; and whether the sureties on the executor's bond would be liable in such a state of case, is a question not necessary to be determined.

In the case of Shields vs. Smith, reported in 8th Bush, 602, relied on by the appellee, the widow renounced the provisions of the will, and the devise to her was thereby rendered a nullity; and besides, the executors sold the land by the direction of both the widow and devisees.

In the case of Waller, &c., vs. Logan's heirs, 5 B. Monroe, the testator devised certain lands to be sold at the death of his widow, who qualified as executrix, and one of the questions was, whether she had the authority to transmit this power to her executors. Her husband died, leaving a will that was probated in Virginia in the year 1877, leaving his wife his sole executrix. She died leaving a will, probated in the same court, in the year 1814. This court, among the reasons given for determining that the purchaser acquired no title, held that as Mary Byrd, the executrix, had no power to make the sale (the power not arising until her death), it could not be delegated by her to her executor.

Sugden on Powers, side pages 334, 335, says:

"10. Sir Edward Coke lays it down as clear that where there is a devise to A for life, and that after his decease the estate shall be sold, the sale cannot be made during A's life, but must wait until his decease. Mr. Hargrave says this is a doubtful point in the authorities. There was a case before Lord Hardwick, in which he expressed an opinion on this question, which appears to have been overlooked. I allude to Mordale v. Mordale, 3 Atk., where the devise was to the wife for life, and after her death the testator willed that the same should be sold, and Lord Hardwick said that the words after her decease were not put in to postpone the sale. However, in a late case before the Court of Exchequer (in which the case of Mordale v. Mordale was cited), where the devise was to A (the testator's wife) for life, and after her death a power to trustees to sell and distribute, &c., the court held that the estate could not be sold until after the death of the widow; and, after two arguments, dismissed the bill." (See Bentham v. Witt's heirs, 4th Maddox's Chancery Reports, 30.)

The conclusion, therefore, is, that the widow had no authority to sell any greater interest than her life estate. There is no evidence showing that the sale of the absolute title was made by the consent of these appellants, or that they acquiesced in the sale by receiving money from the widow in the distribution, knowing that it was the proceeds of the sale of this land.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.