CORNWELL et al., v. WULFF, Appellant.

In Banc, March 14, 1899.*

1. **Conveyances**: EQUITABLE ESTATE: DURATION. Equitable estates are governed by the same rules as legal estates as to duration.

2. ————: ————: ABSOLUTE POWER OF DISPOSITION. An absolute power of disposition, contained in an instrument conveying land, amounts to an absolute grant of the real estate itself.

*NOTE.—Decided December 23, 1898. Motion for rehearing filed. Rehearing denied March 14, 1899.

3. ———: ———: DEED; ESTATE CONVEYED. By a deed of bargain
and sale, Catherine Cornwell was made party of the third part and
Yeates "granted, bargained, sold and conveyed" to Goodlett, "party
of the second, his heirs and assigns" certain lands, "to have and to
hold the same, with all the rights, privileges and appurtenances
thereto belonging or in anywise appertaining unto him, the said
party of the second part, his heirs and assigns forever. In trust,
however, to and for the sole and separate use, benefit and behoof of
said Catherine Cornwell, wife of James Cornwell; and the said Good- ·
lett hereby covenants and agrees with the said Catherine Cornwell
that he will suffer and permit her without let or molestation, to have,
hold, use, occupy and enjoy the aforesaid premises, with all the
rents, issues, profits and proceeds arising therefrom, whether from
sale or lease, for her own sole use and benefit, separate and apart
from her said husband and wholly free from his control or inter-
ference, and from his debts in such manner as she may think proper;
and that he will at any and all times hereafter at the request and
direction of the said Catherine Cornwell, expressed in writing, signed
by her or by her authority, bargain, sell, mortgage, convey, lease,
rent or otherwise dispose of said premises, in such manner, to such
person or persons and at such time or times, as the said Catherine
Cornwell shall by her last will and testament, or any other writing
signed by her, direct and appoint; and in default of such appointment
then, that he will convey said premises to said James Cornwell, his
heirs or assigns." Goodlett did not sign the deed. Catherine Corn-
well made no disposition of the land during her life, and after her
death her husband sued the trustee in the land court, and in pursu-
ance to a decree of that court the trustee conveyed it to him, and it
passed by *mesne* conveyances to defendant, and since the husband's
death the heirs of Catherine and James Cornwell have sued in eject-
ment. *Held*, first, that Mrs. Cornwell took by the deed an unlimited
and unrestricted equitable fee simple, and that the deed having
created an estate in fee simple in her any attempt to limit another
estate thereafter was void; second, that at her death her estate
devolved upon her heirs at law, subject to her husband's curtesy,
just as if the deed had created a legal estate in her; third, that, as
the equitable estate at her death devolved upon her heirs as an exe-
cuted trust the trustee had no discretion left in him to convey to any
other persons than her heirs, who became the *cestui que trust;* fourth,
that even if the trustee had signed the deed, his covenant, voluntarily
imposed, could not have so enlarged his powers that he could have
defeated the trust imposed upon him to hold the fee simple in the
lands for the sole benefit of Mrs. Cornwell and her heirs.

4. ———: DRY TRUST: DUTY OF TRUSTEE. When a conveyance creates
what is denominated a dry trust, the duty of the trustee, imposed by
law, is: First, to permit the *cestui que trust* to occupy and receive

rents and incomes of the estate; second, to execute such conveyances as the *cestui que trust* directs; third, to protect the title or allow his name to be used for that purpose.

5. **Statute of Uses:** LIMITATION OF FEE UPON A FEE: EXECUTORY DEVISE. Under the Missouri Statute of Uses a conditional limitation of a fee may be limited upon a fee, by way of use; but a valid executory devise or limitation over after a fee simple, can not subsist with an absolute power of disposition in the first taker.

6. ———: ———: ———: CONDITIONAL LIMITATION: UNEXECUTED. There can not be a valid conditional limitation or executory devise over where the executory limitation is conjoined with an absolute power in the first taker to defeat the subsequent estate by alienation of the entire estate in his lifetime. Nor does it make any difference, as to the rights of the ulterior grantee or devisee whether this power to alien has or has not been exercised by the first taker. (Criticising Stratt v. Uhrig, 56 Mo. 482.)

## (Per MARSHALL, J., dissenting; SHERWOOD and BRACE, JJ., concurring.

1. **Conveyances:** NECESSARY WORDS TO CARRY FEE. It is no longer necessary under the Missouri statute, to pass the fee, that a deed contain words of inheritance. Now deeds and wills stand on the same footing, and a grant or devise by name carries the fee without the term "heirs" or other words of inheritance.

2. ———: CONSTRUCTION: INTENTION. The true rule of construction of deeds is that the intention of the grantor shall be observed unless it conflicts with some inflexible rule of law, and that intention must be gathered from the four corners of the instrument.

3. ———: ———: ———: LIFE ESTATE: EQUIVALENT WORDS. Any equivalent words gathered from the instrument as a whole, that clearly express the grantor's intention to create a life estate in the first taker, are of as much force as the words "life estate" themselves.

4. ———: ———: ———: ———: ABSOLUTE ESTATE LIMITED. An absolute gift of an estate to the first taker will be limited to a life estate provided the set phrase "for life" or *equivalent terms* are made to qualify the absolute title. The old inflexible rule of the common law has been relaxed in America, and it is now conceded that words which would create an absolute fee simple estate if standing by themselves, may be qualified or limited by other words in the same instrument, so as to create a life estate in the first taker and vest a fee in remainder. The only practical difference between the two classes of cases is *what words* shall be deemed sufficient to so limit what would otherwise be an absolute fee.

5. ——: ——: ——: ——: ——: EQUIVALENT WORDS. The deed in this case conveyed to Mrs. Cornwell an absolute power of disposal, not qualified by any express life estate, but with a clear intention of the grantor superadded that whatever is left of the estate after her death, or undisposed of by her, was to vest in her husband; the intention of the whole deed, therefore, was to provide for her during her life, and after her death for her husband. The last clause, when taken in connection with the other words of the *habendum*, are clearly equivalent words to those usually employed to create an express life estate in the first taker with remainder in fee in the next.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

L. F. PARKER for appellant.

(1) The deed from Yeates to Goodlett was a conveyance to uses, and prior to the adoption of the statute of uses, a fee might be limited upon or after a fee in such a conveyance, though such a limitation would have been void if contained in a common law conveyance. 2 Kerr on Real Prop. (Ed. 1895), sec. 1635, 1655, 1659 and 1663; Spence's Eq. Jur. (Ed. 1846), p. 455; 2 Pomeroy's Eq. Jur. (Ed. 1892), pp. 982 and 983; 1 Hilliard on Real Prop. (4 Ed.), sec. 18. (2) The effect of the statute of uses was to execute the use, confidence and trust "after such quality, manner, form and condition," as the beneficiary had, in equity, prior to its adoption; and hence, under the statute of uses, a fee may be limited upon or after a fee in a conveyance to uses. Shepard's Touchstone (Ed. 1840), p. 424; Tiedeman on Real Prop. (2 Ed.), secs. 449 and 484; 4 Kent's Com. (13 Ed.), 126, 249 and 294; 2 Blackstone's Com. (Cooley's 3 Ed.), top p. 332, side p. 334; Spence's Eq. Jur. (Ed. 1846), pp. 480-481; Gray's Perpetuities, secs. 32 and 54; 1 Fearne on Remainders (Ed. 1845), pp. 381, 382; Wilson on Spring-

ing Uses, p. 9; Smith on Executory Interests (Ed. 1857), 18; top pp. 50, 51; 2 Wash. on Real Prop. (5 Ed.), top pp. 669 and 670; 1 Hilliard on Real Prop. (4 Ed.), secs. 17 and 18; 2 Greenleaf's Cruise on Real Prop. (Ed. 1850), top p. 422; Sanders on Uses and Trusts (Ed. 1857), p. 149; Outlines of Eq. (Haynes' 5 Ed.), p. 43; Challis on Real Prop., top p. 124, side p. 136; 20 Am. and Eng. Ency. of Law, 904, 909, 918-920, and 947-955; Straat v. Uhrig, 56 Mo. 482; 11 Minor's Institute, pp. 176 and 738.

THOMAS P. BASHAW, H. C. HERBEL and EBER PEACOCK for respondents.

(1) The deed under which plaintiffs claim, i. e., the deed from Yeates and wife to Goodlett, trustee for Catherine Cornwell, vested the entire estate in the lands in Catherine Cornwell; and that effect can not be given to the so-called covenant of the trustee to convey to James Cornwell, should she die without making or directing some other disposition of the land. Green v. Sutton, 50 Mo. 186; Tremmel v. Kleiboldt, 75 Mo. 255; s. c., 6 Mo. App. 549; Cornwell v. Orton, 126 Mo. 353; Cornwell v. Wulff, 126 Mo. 355. (2) Upon the death of Catherine Cornwell, December 25, 1860, the estate vested in her heirs, plaintiffs herein, subject to the intervening particular estate of James Cornwell, as tenant by curtesy. Tremmel v. Kleiboldt, 75 Mo. 255; s. c., 6 Mo. App. 549. (3) And, upon the death of James Cornwell, December 25, 1889, plaintiffs' right of action accrued. (4) This was a simple or dry trust, because, although the trust is prescribed by the donor, yet it is only what it would have been if left to the construction of law, i. e., (a) to permit the *cestui que trust* to occupy and receive the rents and profits ; (b) to execute conveyances, or make such disposition of the estate as the *cestui que trust* may direct; and (c) to protect the title, the remaining covenant to convey to James Cornwell being

of no effect.   And being a simple trust, it was executed by the statute of uses.   1 Perry on Trusts (4 Ed.), secs. 520 and 521.   But if the last proposition be not the law, it is certainly the rule in this State, that where land is conveyed to a trustee for the sole and separate use of a married woman, upon the death of her husband, the use thus created becomes immediately executed in the wife, or, if she be dead, in her legal heirs.   Roberts v. Moseley, 51 'Mo. 282; s. c., 64 Mo. 507.   (5)   It is plain that plaintiffs are not bound by the decree of the St. Louis land court in Cornwell v. Goodlett, as they were not parties to the suit; and that James Cornwell acquired no interest in the lands under the deed from Goodlett, made under the decree.

GANTT, C. J.—This is an action of ejectment for certain lands in St. Louis county.   The plaintiffs recovered judgment for possession and rents and profits in the circuit court and defendant appeals.   This is the second appeal in the cause.   The first will be found reported in 126 Mo. 355, and 28 S. W. Rep. 162.

The purpose of this appeal is to have this court review its opinion and judgment in Cornwell v. Orton and Cornwell v. Wulff, 126 Mo. 355, and overrule those cases, and incidentally to overrule Green v. Sutton, 50 Mo. 186, decided in 1872 by the Supreme Court.

The earnestness of counsel for appellant and the thorough brief and argument which he presented, no less than the admirable tone thereof, are such that we feel impelled to review our former opinions and examine anew the gounds upon which they were based.

The common source of title was in Robert A. Yeates, and both parties claim under a deed executed by said Yeates and wife on the fifteenth day of October, 1895, to John A. Goodlett, as trustee, which deed is in these words (omitting

the acknowledgment and certificate of record which are in due and lawful form):

"This deed, made and entered into this 15th day of October, 1859, by and between Robert A. Yeates and Sophie Yeates, his wife of, etc., parties of the first part, and John A. Goodlett, of, etc., party of the second part, and Catherine Cornwell, wife of James Cornwell, of, etc., party of the third part, witnesseth: That the said parties of the first part, in consideration of the sum of thirty-one hundred and seventy-two and 40-100 dollars to them in hand paid by the said party of the second part, receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said party of the second part, and his heirs and assigns, a certain tract or parcel of land situated, etc., to have and to hold the same, with all the right, privileges and appurtenances thereto belonging or in anywise appertaining unto him the said party of the second part, his heirs and assigns forever. In trust, however, to and for the sole and separate use, benefit and behoof of said Catherine Cornwell, wife of said James Cornwell; and the said John A. Goodlett, party of the second part, hereby covenants and agrees to and with the said Catherine Cornwell that he will suffer and permit her without let or molestation, to have, hold, use, occupy and enjoy the aforesaid premises, with all the rents, issues, profits and proceeds arising therefrom, whether from sale or lease, for her own sole use and benefit, separate and apart from her said husband and wholly free from his control or interferences, and from his debts, in such manner as she may think proper; and that he will at any and all times thereafter at the request and direction of the said Catherine Cornwell, expressed in writing, signed by her or by her authority, bargain, sell, mortgage, convey, lease, rent or otherwise dispose of said premises, or any part thereof; and will pay over the rents, issues, profits and proceeds thereof which may come into his hands,

and not otherwise liable, to her, the said Catherine Cornwell, in such manner as she shall in writing direct or request; and that he will, at the death of the said Catherine, convey or dispose of the said premises or such part thereof as may then be held by him under this deed, and all profits and proceeds thereof in such manner, to such person or persons and at such time or times as the said Catherine Cornwell shall by her last will and testament, or any other writing signed by her or by her authority, direct or appoint; and in default of such appointment then, that he will convey said premises to said James Cornwell, his heirs or assigns."

It was then admitted by both parties:

1.   That the defendant is now in the possession of the property and was at the institution of this suit.

2.   That Mrs. Catherine Cornwell died, intestate, December 23, 1860, without having made any conveyance of said real estate or appointment under said conveyance in her lifetime.

3.   That James Cornwell died December 25, 1889, and the plaintiffs are Mrs. Catherine Cornwell's children and grandchildren and heirs of James Cornwell.

4.   That the plaintiffs Frederick J. Cornwell and Catherine Holmes, wife of James C. Holmes, are the children of Catherine Cornwell, and that Charles J., Frederick J. and Benjamin S. Cornwell, infant plaintiffs, are the children of Benjamin Cornwell, who died prior to the institution of this suit, and who was the son of Catherine Cornwell; and these plaintiffs are represented in this suit by their next friend, Helen V. Cornwell, plaintiff and widow of said Benjamin Cornwell deceased, who was duly appointed their next friend in this case prior to the institution of this suit.

5.   That James Cornwell and Catherine Cornwell were husband and wife at and prior to the date of the deed of Yeates to Goodlett.

6.   That plaintiffs are the only heirs at law of Catherine Cornwell.

7. That the value of the monthly rents and profits of the premises is, and since James Cornwell died has been, $10.

Whereupon plaintiff rested.

The defendant then asked the court to declare that under the pleadings and the evidence the plaintiff was not entitled to recover, which the court refused to do, and defendant excepted at the time.

Defendant offered and read in evidence a' decree of the St. Louis Land Court, rendered at the March term, 1862, in a case wherein James Cornwell was plaintiff and John A. Goodlett was the sole defendant, by which decree the court required said Goodlett to convey to James Cornwell the premises described in the deed from Yeates to Goodlett as provided in the final clause in said deed.

Defendant then offered and read in evidence a deed from John A. Goodlett as trustee to James Cornwell, dated May 21, 1862, conveying the same property pursuant to said decree.

Defendant then offered and read in evidence a warranty deed from James Cornwell to Peachey A. Garriott, dated January 31, 1867, conveying the same property.

Defendant then offered and read in evidence a warranty deed from Peachey A. Garriott and wife to Hans Tyson and George W. Wulff, dated July 26, 1887, conveying the same property.

Defendant then offered and read in evidence a quitclaim deed from Hans Tyson to George Wulff, dated September 21, 1887, conveying the same land.

And this was all the evidence.

The court found for the plaintiffs, and rendered judgment accordingly.

Within four days defendant filed his motion for new trial, alleging as grounds that the court erred in refusing to declare that plaintiff was not entitled to recover, and in finding for the plaintiffs under the evidence, when the finding should have been for the defendant. This motion was over-

ruled and the defendant excepted at the time, and during the same term and on August 30, 1895, defendant was given sixty days within which to file his bill of exceptions.   And on October 28, 1895, defendant filed his bill of exceptions, preserving all exceptions above noted; and during the same term of court at which said judgment was rendered the defendant duly perfected his appeal to this court.

I.   As already remarked in the accompanying statement the deed of Robert Yeates, the common source of title has been twice construed by this court in Cornwell v. Orton, 126 Mo. 355, and Cornwell v. Wulff, 126 Mo. 355.

In those cases it was held that the said deed created an absolute equitable fee simple in and to the land in controversy in Mrs. Catherine Cornwell and at her death descended to her heirs subject to the curtesy of her husband, James Cornwell, and at his death on the twenty-fifth of December, 1889, they were entitled to the possession thereof.   It is that construction of said deed which is now, for the third time, challenged by defendant.  On the former occasions it was insisted as now by defendant, first, that the deed only created a life estate in Mrs. Cornwell with a power of appointment only, and that as she failed to appoint, the trustee was authorized to convey the remainder to Mr. Cornwell as covenanted by the trustee; second, that granting that the deed created an equitable fee in Mrs. Cornwell, this deed was a conveyance to uses and the feoffor to use had a right to and did provide for the vesting of a fee simple upon the fee simple granted Mrs. Cornwell upon her failure to appoint as permitted by the deed.   Essential to any intelligent discussion of this deed it must be first determined what equitable estate Mrs. Cornwell took under the deed, as to duration, whether for life or in fee simple.  The words of the grant convey the land to the trustee and his heirs and assigns to have and to hold the same with all the rights, privileges and appurtenances unto him and his heirs and assigns forever in trust however to and

for the sole and separate use and benefit of Mrs. Cornwell, and the words of the covenant of said trustee are that she shall have the full use and occupancy of said land, with all rents, issues and products for her own sole use and benefit and with full power to bargain, sell, mortgage, convey, lease, rent or otherwise dispose of said premises, etc.  Now it is a fundamental principle that equitable estates are governed by the same rules as legal estates as to duration, otherwise inextricable confusion must result.  Omitting for the present all discussion of the claim that the covenant of the trustee constitutes a conditional limitation over to James Cornwell, the husband, it must, we take it, be entirely plain that, in the absence of that clause in the deed, the trustee acquired the entire fee simple estate in the land, leaving no reversion whatever in the grantor Yeates, and that he took said fee in trust for the sole use and benefit of Mrs. Cornwell and with an unlimited and absolute right in her to take and hold the possession of said lands free from any molestation on the part of said trustee and receive all and every beneficial interest to be derived therefrom, and with full power to sell, mortgage, or dispose of them in any manner she saw fit.  In other words it can not be controverted, we think, that Mrs. Cornwell took exactly as large an equitable estate in these lands as her trustee or feoffee to her use held in law for her benefit, to wit, an equitable fee simple.  [Webster v. Cooper, 14 How. (U. S.) 499.]  No principle is more securely imbedded in the law of this State than that in the construction of instruments conveying land, an absolute power of disposition carries with it a full fee in the real estate itself.  [Rubey v. Barnett, 12 Mo. 3; Norcum v. D'Oench, 17 Mo. 98; Green v. Sutton, 50 Mo. 186.]

This court in Rubey v. Barnett and Green v. Sutton, also approved the rule laid down in Jackson v. Robins, 16 Johns, 587, in which the court of errors, New York, said: "We lay it down as an incontrovertible rule that where an

estate is given to a person generally or indefinitely with a power of disposition it carries a fee, and the only exception to the rule is where the testator gives to the first taker an estate for life only by certain and express words and annexes to it a power of disposal. In that particular and special case the devisee for life will not take an estate in fee notwithstanding the distinct and naked gift of a power of disposition of the reversion."

As pointed out in Cornwell v. Orton, 126 Mo. 355, that rule has been modified, particularly in the construction of wills, in this State by subsequent decisions to this extent only, that it no longer is necessary that the life estate should be created by express words but if it is the clear intention from the whole will that the first taker is to have but a life estate, the added power of disposition will not convert it into an absolute ownership. [Lewis v. Pitman, 101 Mo. 281; Munro v. Collins, 95 Mo. 33; Harbison v. James, 90 Mo. 411; Redman v. Barger, 118 Mo. 568.]

There are no words in this deed which expressly limit Mrs. Cornwell's use to her life only, nor are there any words which indicate an intention to so limit her use in said lands. This is a deed of bargain and sale and not a gratuity, and it is a wholesome and familiar rule that it shall be construed most favorably to the bargainee. We confidently assert that no adjudicated case can be found in which a more unlimited, unrestricted power of sale, coupled with a beneficial interest in the estate granted, is vested in the first grantee than was conferred upon Mrs. Cornwell by this deed. Moreover there is nothing in the *habendum* that squints at a limitation of the equitable fee simple created in her by the granting clause of the deed. Nor is there a single limitation over by the grantor by way of remainder or conditional limitation to any other person or persons. It goes without saying that, if this conveyance is to be tested by common law principles, having created an estate in fee simple in Mrs. Cornwell, any attempt

to create a remainder thereafter, would be void. [2 Bl. Com. 164; 1 Fearne on Remainders (4 Am. Ed.), 12; 2 Thomas's Coke on Littleton, 126 and note "B.;" Green v. Sutton, 50 Mo. 186.]

If it is to be considered a trust, nothing can be plainer than that upon Mrs. Cornwell's death, the trust being an executed trust ceased when the occasion for its creation ended, to wit, the protection of her equitable fee during coverture, and thereupon her estate devolved upon her heirs at law subject to her husband's curtesy just as if it had been a legal estate. [McTigue v. McTigue, 116 Mo. 138; Roberts v. Mosley, 51 Mo. 282; Pitts v. Sheriff, 108 Mo. 110.]

It is elemental that equitable estates are governed by the same rule of descents that governs the devolution of legal estates and if this were not so great confusion would result. [1 Perry on Trusts, sec. 357; Cushing v. Blake, 30 N. J. Eq. 689.] When therefore it is determined that Mrs. Cornwell by the terms of the deed itself took an equitable estate in fee simple in these lands it follows that upon her death it descended to her heirs, the plaintiffs in this case, subject to the curtesy of her husband. But more than that by the statute of uses of Missouri, but for the fact that she was a married woman and at that time not *sui juris*, the whole beneficial interest would have been executed in her during her life in fee simple with absolute power to convey and dispose of and at her death no estate whatever would have remained in the trustee Goodlett. An examination of the deed will convince the most skeptical that the grantor or feoffer to uses imposed no duties whatever upon Mr. Goodlett, the trustee, which could in any manner interfere with Mrs. Cornwell's complete enjoyment or alienation of these lands. On the contrary the sole duty devolved upon him was to passively permit the legal estate to remain in him during her coverture and to do and perform whatever Mrs. Cornwell might direct him to do. That he so construed the deed is evidenced by the fact that he did not

even formally accept the trust, did not sign the deed, and never made a deed to James Cornwell until compelled by the decree of the land court to do so.    There is not a line or word which confers upon him the slightest discretion in the devolution of said estate.    It is a perfect example of a dry, executed trust, except that it is for a married woman.

The English and American Reports are replete with well considered cases which draw the distinction between executed and executory trusts.    [Wright v. Pearson, 1 Eden, 119;  Boswell v. Dillon, Drury, 291;  Cushing v. Blake, 30 N. J. Eq. 689; 1 Perry on Trusts, sec. 359.]

Lord Chancellor Sugden, in Boswell v. Dillon, Drury, 291, points out the distinction in these words: "By the term an executory trust when used in its proper sense we mean a trust in which some further act is directed to be done. Executory trusts in this way may be divided into two classes, one, in which, though something is required to be done, (for example a settlement to be executed) yet the testator has acted as his own conveyancer as it is called and defined the settlement to be made, and the court has nothing to do but to follow out and execute the intentions of the party as appearing on the instrument.    Such trusts though executory, do not differ from ordinary limitations and must be construed according to the principles applicable to legal estates depending upon the same words.    The other species of executory trusts is where the testator, directing a further act, has imperfectly stated what is to be done.    In such cases the court is invested with a larger discretion and gives to the word a more liberal interpretation than they would have borne if they had stood by themselves."

"All trusts," says Lord St. Leonards, "are in a sense executory because a trust can not be executed except by a conveyance but this is not the sense which a court of equity puts upon the term executory trusts."    [Egerton v. Earl Brownlow, 4 H. L. Cas. star page 210.]

In Cushing v. Blake, 30 N. J. Eq. 702, the chancellor says with the unanimous approval of the whole court: "In this case the trusts upon which the trustee was required to hold the estate were definitely and perfectly expressed and he had no duties to perform but to hold and convey accordingly." [Pugh v. Hays, 113 Mo. loc. cit. 432.] "The trusts are such as are regarded as executed trusts in a court of equity, and the estates created by the trust and all the incidents connected therewith are the same as would arise in law upon a legal conveyance expressed in the same language."

Accordingly the husband as in this case upon issue born capable of inheriting and the death of Mrs. Cornwell was entitled to his curtesy. So that whether we regard this deed as creating in Goodlett, the trustee, an estate by way of bargain and sale to the sole use of Mrs. Cornwell in fee simple and that the use was created in the bargainee Goodlett [Guest v. Farley, 19 Mo. 147], upon her death the equitable estate devolved upon her heirs as an executed trust and the trustee had no discretion left in him to convey to any other persons than her heirs, who became the *cestuis que trustent*. [McTigue v. McTigue, 116 Mo. 138.]

But it is argued by respondents that the trust created was what is demonstrated a dry trust. Such a trust arises, says Perry in his work on Trusts, section 520, "when property is vested in one person in trust for another, and the nature of the trust not being prescribed by the donor, is left to construction of law. In such case the *cestui que trust* is entitled to the actual possession and enjoyment of the property, and to dispose of it or to call upon the trustee to execute such conveyance of the legal estate as he directs." In such case the duty of the trustee is simple: First to permit the *cestui que trust* to occupy and receive rents and incomes of the estate; second, to execute such conveyance as the *cestui que trust* directs; third to protect the title or allow his name to be used for that purpose. Now this is just the character of

trust which was created in Mr. Goodlett for Mrs. Cornwell had she been a *feme sole* or *sui juris*. [Witham v. Brooner, 63 Ill. 344; Lynch v. Swayne, 83 Ill. 336; Kirksland v. Cox, 94 Ill. 400.]

The duties imposed upon the trustee were such and only such as the law would have required at his hands, leaving to her the absolute control over the beneficial interest, together with a right to call for the legal title, but being a married woman at the time of its creation and at her death, it has been ruled that the statute of uses did not vest the legal estate in her during her life or coverture, but in her trustee for her sole use and benefit [Dean v. Long, 122 Ill. 458; Perry on Trusts (4 Ed.), sec. 310, and cases cited, and 310a], but when she becomes discovert, or dies, the statute executes the use in her, or her heirs. [Roberts v. Moseley, 51 Mo. 282; Pitts v. Sheriff, 108 Mo. 110; 2 Minor's Inst. 737, 39; 2 Thomas's Coke Litt. 574, note a; 122 Ill. 458.]

When this case was here on a former occasion we ruled that the deed created an equitable fee simple in Mrs. Cornwell, which, upon her death, descended to her heirs at law, the plaintiffs in the case; that the trust was an executed one; that therefore Mrs. Cornwell took the same estate in duration as in a legal estate, which under our statute would most clearly have been a fee simple in law but for the intervention of the trustee, and that the estate so granted to her was subject to the same incidents, properties and consequences as belong to similar estates at law, and that it was not competent to limit a remainder upon it, seeing that such a limitation would be repugnant to the grant to Mrs. Cornwell. Learned counsel now concedes that if this covenant of Mr. Goodlett, the trustee, is to be construed as creating a remainder, then it must fail because a remainder can not be limited after a fee simple, but he urges that it can be upheld as a conditional limitation of a fee upon a fee under the statute of uses. All the learning upon this subject has been brought in review to

show that under our statute of uses which is but a rescript of the Statute of Uses, 27 Henry VIII, Ch. 10, a fee simple may be limited upon a fee simple.

Under the Statute of Uses, and indeed before that statute, a species of limitations known as shifting or springing uses had been recognized which permitted ulterior estates to be created, to arise upon the defeasance of prior estates in the same property contrary to the strict rules of the common law. The courts after the passage of the Statute of Wills (32 Hen. VIII.), following the analogies furnished in conveyances to uses and in support of the intention of the testator, gradually came to recognize the validity of limitations not permitted in conveyances at common law. In this way originated what lawyers denominate "executory devises," whereby a fee may be limited after a fee.

That this could be done was finally settled in England in the case of Pells v. Brown, Cro. Jac., 590, a case which Lord Kenyon, in Porter v. Bradley, 3 Term Reports, 145, declares has ever since been regarded as "the foundation and as it were Magna Charta of this branch of the law."

Far be it from me to question this doctrine, as declared in that case. The philosophy of that case, as I understand it and as I find it interpreted by the courts since, is that although the prior estate is denominated a fee because it may last forever, it is nevertheless a base or determinable fee because it is liable to be defeated by the happening of the contingency upon which it is limited. [2 Minor's Inst., 77 2e.] Thus in Pells v. Brown the devise was in fee to Thomas and his heirs forever, and if he die without issue in the lifetime of William his brother, then to William and his heirs. The court all agreed that this was a good devise of the fee to William by way of that contingency, not by way of immediate remainder, for they all agreed it could not be by remainder, as if one deviseth land to one and his heirs and if he die without heir that it shall remain to another it is void

and repugnant to the estate, for one fee can not be in remainder after another, for the law doth not expect the determination of a fee by his dying without heirs and therefore can not appoint a remainder to begin upon determination thereof, but by way of contingency and by way of executory devise to another, to determine the one estate, and limit it to another, upon an act to be performed or in failure of performance thereof, etc. Just such a case was Chew v. Keller, 100 Mo. 362. In that and like cases the right of the ulterior devisee can not be cut off or divested by any act of the primary devisee.

His estate is not subject to the will of the first taker, but depends upon the event of life or death or other contingency not within the control or volition of the first taker. In 1 Fearne on Remainders, 418, the author says: "The great and essential difference between the nature of a contingent remainder and that of an executory devise (and that indeed which renders it material to distinguish the one from the other in their creation), consists in this: That the first may be barred and destroyed or prevented from taking effect by several different means, whereas it is a rule that an executory devise can not be prevented or destroyed by any alteration whatever in the estate out of which or after which it is limited."

The question presented here and argued now for the first time is this: Can there be a valid conditional limitation or executory devise where the executory limitation is conjoined with an absolute power in the first taker or primary devisee to defeat and cut off the further estate or interest by alienation of the entire fee in his lifetime, and whether it makes any difference as to the rights of the ulterior grantee or devisee whether this power to alien has or has not been exercised?

Whatever preconceived notions we may have I take it this question being one so seriously affecting property rights, should be determined by the adjudicated law, and we should

not be swerved from the law because some grantor, devisor or conveyancer has attempted to do what the settled rules of law will not permit. [Brown v. Rogers, 125 Mo. loc. cit. 398; Hogan's Heirs v. Welcker, 14 Mo. 177.] Appealing then to the decided law and recognized authority, we find Chancellor Kent in his Commentaries, 4 Kent (12 Ed.), star p. 270, declaring: "If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling, or devising the same; in all such cases the remainder over is void as a remainder because of the preceding fee and it is void by way of executory devise because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied from the will. A valid executory devise can not subsist under an absolute power of disposition in the first taker."

It was urged in argument that this doctrine rested upon the great name of Kent. If so it has no ignoble origin, but as we shall presently see, this is not true, though his recognition of the rule has no doubt greatly added to its stability.

We have the testimony of the Court of Appeals of New York in Van Horne v. Campbell, 100 N. Y. 287, to the effect that beginning with Jackson v. Bull, 10 Johns. 19, and down to Van Horne v. Campbell, there is an unbroken line of authorities in that State reasserting, following and adopting the rule as announced by Chancellor Kent. It has been assailed in New York, as in this case, but the court of appeals held that the question must be considered as closed in New York. It has received the unqualified indorsement of Chief Justice Savage, Cowen and Denio, and of all save one member of the court in Van Horne v. Campbell. In Massachusetts, in Ide v. Ide (1809), 5 Mass. 500, the same doctrine was announced by

Chief Justice Parsons, several years before Jackson v. Bull, was decided, and has been reaffirmed in Gifford v. Choate, 100 Mass. 343; Kelley v. Meins, 135 Mass. 231; Joslin v. Rhoades, 150 Mass. 301; Kent v. Morrison, 153 Mass. 137; Foster v. Smith, 156 Mass. 379. In Fisher v. Wister, 154 Pa. St. 65, Jackson v. Bull, came under review and all the learning on the subject reexamined and the doctrine approved. The validity of the rule announced by Kent has been repeatedly recognized and followed in Illinois. [Fairman v. Beal, 14 Ill. 244; Welsch v. Bank, 94 Ill. 203; Wolfer v. Hemmer, 144 Ill. 554.]

Kentucky, in an able opinion by Chief Justice HARGIS, in Ball v. Hancock, 82 Ky. 107, a case strikingly like the one at bar, approves Kent's statement of the law, and Jackson v. Robins, 16 Johns. 587.

The Court of Appeals of Maryland, in Combs v. Combs, 67 Md. 11, citing Chief Justice PARSONS in Ide v. Ide, and quoting Chancellor Kent's declaration, that "we are obliged to say that an absolute ownership or capacity to sell, in the first taker and a vested right by way of executory devise in another which can not be affected by such alienation, are perfectly incompatible estates and repugnant to each other and the latter is to be rejected as void," said: "Both of these great jurists cited and relied upon the case of The Attorney-General v. Hall, Fitzgibbons, 314, decided by Lord Chancellor King, assisted by the Master of the Rolls and Chief Baron Reynolds, and quoted with approval by Lord Hardwicke in Flanders v. Clarke, 1 Vesey Sr. Reports, 9. These, assuredly, are authorities of great weight. We think they ought to be considered as settling the law."

In Hoxsey v. Hoxsey, 37 N. J. Eq. 21, the Chancellor relied upon 4 Kent 270, and Ide v. Ide, *supra*, to the effect that a valid executory devise could not subsist with an absolute power of disposition in the first taker.

VOL. 148 mo—36

In Howard v. Carusi, 109 U. S. 725, the Supreme Court of the United States unanimously cite and follow Jackson v. Bull and Ide v. Ide, and adopt Chancellor Kent's text, 4 Kent, 271.

In Alabama, Flinn v. Davis, 18 Ala. 132, and McRee v. Means, 34 Ala. 349, assert that the law is too well settled to be controverted that an absolute power of disposition in the first taker defeats a limitation over.

And so it will be found in Maine, Ramsdell v. Ramsdell, 21 Me. 288, and in Virginia, Malson v. Doe, 4 Leigh, 408; Riddick v. Cohoon, 4 Rand. 547; and in Georgia, Cook v. Walker, 15 Ga. 457; and in Indiana, Tower v. Hartford, 115 Ind. 186. In a word, it may be asserted that as late as 1893 there could be found but two American cases outside of Missouri, which disputed the authority of Ide v. Ide, and Jackson v. Bull, and these were Hubbard v. Rawson (1855), 4 Gray, 247, and Andrews v. Roye (1860), 12 Rich. (S. C.) 536, and neither of these cases has been followed in their respective States. This brings us to inquire now as to the state of the law in this State.

In Rubey v. Barnett, 12 Mo. 6, Judge Scott said: "It has always been held that an absolute power of disposition over property conferred by will not controlled by any provision or limitation, amounted to an absolute gift of the property. A power to dispose of a thing as one pleases must necessarily carry along with it a full property in it." He cites with approbation Jackson v. Robins, 16 Johns. 587.

In Gregory v. Cowgill, 19 Mo. 415, Judge Scott cites Ide v. Ide, 5 Mass. 203, with approval. But in Wead v. Gray, 78 Mo. 65, this court, after deciding that the first taker took an absolute estate, referred to the clause giving a remainder over to a designated charity and a niece of the testator, and said: "The limitation over was void as an executory devise. Mr. Redfield in his work on Wills, volume 2, p. 278, says: 'It is a settled rule of American as well as

English law, that where the first devisee has the absolute
right to dispose of the property in his own unlimited discre-
tion and not a mere power of appointment among certain
specified persons or classes, any estate over is void as being
inconsistent with the first gift.' " [Citing Ide v. Ide, 5 Mass.
500.] Here is a clear, distinct recognition and approval of
the case decided by Chief Justice PARSONS. Prior to that,
however, in State ex rel. v. Tolson, 73 Mo. 320, this court
held that the attempt to limit by executory devise after an
absolute fee simple, was void on the ground that "the limita-
tion was repugnant to the devise and therefore void." Those
two cases were afterwards cited with approval in Munro v.
Collins, 95 Mo. 33, but distinguished from the latter as to
the facts. [Hardy v. Clarkson, 87 Mo. 171.]

It may be well to remark now and here, that those cases
in which this court has construed the estate of the first taker
to be only a life estate, and there are many such, have noth-
ing to do with this question, which is predicated on the prop-
osition that the first taker takes an unconditional fee and the
attempt then is to limit another fee after the first.

Turning now to another class of cases in which the con-
veyances were deeds instead of wills, and we find the same
doctrine announced in Green v. Sutton, 50 Mo. 186. The
deed in that case was in all substantial respects similar to the
deed under construction, save and except that in that deed
there were words in the granting clause of the deed which
attempted to create a limitation over, after Mrs. Green's
death, whereas, in this deed, there are no such words to be
found save in the unsigned covenants of the trustee. On
the main proposition Judge Bliss held, first, that the deed
having conveyed a fee simple to the trustee it was unnec-
essary to use the word "heirs" in connection with Mrs. Green's
name; that she took an unlimited power of disposal and the
attempted limitation over was void. He asks, "Was the use
unlimited?" If so, the attempted limitation is void, and the

rule is not a technical one. It can not matter whether the wife held the legal estate or whether or when the use was executed in her. It is just as impossible to limit an unlimited use as to have a remainder, when the whole is given. Green v. Sutton, in its different aspects, has been approved in many subsequent cases.

Thus in Tremmel v. Kleiboldt, 75 Mo. 258, it was unanimously said of a like deed: "By the terms of the deed under consideration the entire estate was vested in the wife, and no remainder was or could be created by the covenant of the trustee, to convey the property to her legal heirs at her death in default of appointment or other disposition thereof, by her during her life." [Green v. Sutton, 50 Mo. 186.]

In Cook v. Couch, 100 Mo. 29, it was said: "The general rule is that a devise of an estate generally or indefinitely with a power of disposition over it, carries a fee. [Rubey v. Barnett, 12 Mo. 3; Green v. Sutton, 50 Mo. 186.]" And to same effect see Lewis v. Pitman, 101 Mo. 291.

In Wood v. Kice, 103 Mo. 338, the proposition announced by Judge Bliss in Green v. Sutton, that a married woman was not restricted in disposing of her separate estate to the specific mode detailed in the deed to her use, was reasserted. It was cited with approval in Reinders v. Koppelmann, 68 Mo. loc. cit. 491.

Green v. Sutton was decided in 1872. It announced a rule of property. Nearly one hundred volumes of the decisions of this court have since been promulgated without any doubt of its soundness having been expressed. It seems to me a serious matter to say now that it was wrongly decided. The writer had no hesitancy in following it in Cornwell v. Orton, 126 Mo. 355, and the report of that case will show it was not questioned as authority by counsel. [Evans v. Folks, 135 Mo. 397.]

We find, then, that the doctrine announced by Chief Justice Parsons, and followed by Chancellor Kent, has met

the approval of nearly every appellate court in the land, this court among the others.

This court has so recently construed the counterpart of this deed to convey an equitable fee simple in the wife, in the case of McTigue v. McTigue, 116 Mo. 138, that I refrain from further discussion of this point.

Much stress was laid upon Straat v. Uhrig, 56 Mo. 485, as holding a contrary doctrine. Judge ADAMS says of the deed in that case: "The consideration moved from the wife and the object of the deed was no doubt to settle the property on her to be at her absolute disposal during her lifetime, with power in her to dispose of the property by will or by any writing signed by her or by her authority to be carried into effect by the trustee after her death. By the terms of the deed there was a springing contingent trust created in favor of the children." I submit that the deed in that case created an absolute equitable fee in Mrs. Pemberthy, with an added power of alienation in fee, and that the attempted limitation over was void. That case has never been referred to since in any opinion of this court, and has never been approved. It cites no authority, and is clearly out of line with the cases already cited and discussed.

The deed of Yeates must be construed as it is written. Its granting clause is short and unambiguous. It is as follows: "That the said parties of the first part (Yeates and wife) in consideration of the sum of thirty-one hundred and seventy-two and 40-100 dollars to them in hand paid by the said party of the second part (John A. Goodlett) receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the said party of the second part and his heirs and assigns, a certain tract or parcel of land situated, etc., to have and to hold the same with all the rights, privileges and appurtenances thereto belonging or in any

wise appertaining unto him the said party of the second part, his heirs and assigns, forever, in trust however to and for the sole and separate use, benefit and behoof of said Catherine Cornwell, wife of said James Cornwell." Here the granting clause ends. Nowhere within the four corners of this deed can be found one word by which Yeates and wife conveyed, granted or limited any portion of their estate in said lands over to the use of any other person upon the happening of the condition that Mrs. Cornwell had not conveyed said land in her lifetime. Goodlett, the trustee, did not join in the said deed at the time of its execution, and if he had, his covenant, voluntarily imposed, could not, and did not, enlarge his own powers so that he could defeat the trust imposed upon him to hold the fee simple in said lands for the benefit of Mrs. Cornwell. His covenant as grantee moreover did not create nor assume to create another use in James Cornwell. The power to limit the duration of the estate which he was conveying belonged to the grantor Yeates, and nowhere in said deed has he conveyed any estate to the use of James Cornwell, or to anyone else, save Mrs. Cornwell, and to her he gave an unlimited use. So that however entertaining the discussion of counsel as to the right to limit a fee upon a fee by way of use, it has no place in the judicial construction of the meaning and effect of this deed.

Dr. Minor, whose invaluable Institutes counsel has so often invoked in his brief and argument, lays it down as a settled principle that in the limiting of estates under the statutes of uses the same words are required as at common law, save and except where the statutes, as in Virginia and Missouri, dispense with the necessity of the word "heirs" in creating an estate of inheritance. [R. S. 1845, ch. 32, sec. 2, p. 219; R. S. 1889, sec. 8834.] They are no longer necessary. Certainly it will not be seriously contended that the mere covenant of the trustee who never signed this deed would have

destroyed the operative and controlling words of the grant which as we have seen vested in the trustee Goodlett a fee simple in trust for Mrs. Cornwell, who was at the time a married woman. The covenant of the trustee, even if he had signed the deed and accepted the trust, would not have had a greater effect than a *habendum* which this court has held may be entirely rejected if repugnant to the granting clause of the deed. [Major v. Bukley, 51 Mo. 227.]

As the other points involved in Cornwell v. Orton, 126 Mo. 355, are no longer urged, the judgment of the circuit court having been in strict conformity to our former judgments, is affirmed. BURGESS, ROBINSON and WILLIAMS, JJ., concur; SHERWOOD, BRACE and MARSHALL, JJ., dissent.

MARSHALL, J. (dissenting).—Ejectment for ten acres in the north part of lot 3 of a survey and subdivision of the west half of the northwest corner of section 12, township 44, range 5 east, in St. Louis county; Robert A. Yeates is the common source of title. Plaintiffs claim as the heirs at law of Catherine Cornwell, and defendant claims as grantee, by mesne conveyances, of James Cornwell, deceased, husband of Catherine Cornwell.

On October 15, 1859, Yeates and wife executed and delivered to John A. Goodlett, trustee, the following deed:

"This deed, made and entered into this 15th day of October, 1859, by and between Robert A. Yeates and Sophie Yeates, his wife, of, etc., parties of the first part, and John A. Goodlett, of, etc., party of the second part, and Catherine Cornwell, wife of James Cornwell, of, etc., party of the third part, witnesseth: That the said parties of the first part, in consideration of the sum of thirty-one hundred and seventy-two and 40-100 dollars to them in hand paid by the said party of the second part, receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto

the said party of the second part, and his heirs and assigns, a certain tract or parcel of land situated, etc., to have and to hold the same, with all the rights, privileges and appurtenances thereto belonging or in any wise appertaining unto him, the said party of the second part, his heirs and assigns forever. In trust, however, to and for the sole and separate use, benefit and behoof of said Catherine Cornwell, wife of said James Cornwell; and the said John A. Goodlett, party of the second part, hereby covenants and agrees to and with the said Catherine Cornwell that he will suffer and permit her without let or molestation, to have, hold, use, occupy and enjoy the aforesaid premises, with all the rents, issues, profits and proceeds arising therefrom, whether from sale or lease, for her own sole use and benefit, separate and apart from her said husband and wholly free from his control or interference, and from his debts in such manner as she may think proper; and that he will at any and all times hereafter at the request and direction of the said Catherine Cornwell, expressed in writing, signed by her or by her authority, bargain, sell, mortgage, convey, lease, rent or otherwise dispose of said premises, or any part thereof; and will pay over the rents, issues, profits and proceeds thereof, which may come into his hands, and not otherwise liable, to her, the said Catherine Cornwell, in such manner as she shall in writing direct or request; and that he will, at the death of said Catherine, convey or dispose of the said premises or such part thereof as may then be held by him under this deed, and all profits and proceeds thereof in such manner to such person or persons and at such time or times as the said Catherine Cornwell shall by her last will and testament, or any other writing signed by her or by her authority, direct or appoint; and in default of such appointment then, that he will convey said premises to said James Cornwell, his heir or assigns."

On the trial in the circuit court the parties made the following admissions:

"1.  That the defendant is now in possession of the property and was at the institution of this suit.

"2.  That Mrs. Catherine Cornwell died intestate, December 23rd, 1860, without having made any conveyance or appointment of said real estate under said conveyance in her lifetime.

"3.  That James Cornwell died December 25th, 1889, and the plaintiffs are Mrs. Catherine Cornwell's children and grandchildren and her heirs at law, and are also the only children and heirs of James Cornwell.

"4.  That the plaintiffs, Frederick J. Cornwell and Catherine Holmes, wife of James C. Holmes, are the children of Catherine Cornwell, and that Charles J., Frederick L. and Benjamin S. Cornwell, infant plaintiffs, are the children of Benjamin Cornwell, who died prior to the institution of this suit, and who was the son of Catherine Cornwell; and these plaintiffs are represented in this suit by their next friend, Helen V. Cornwell, plaintiff and widow of said Benjamin Cornwell, deceased, who was duly appointed their next friend in this case prior to the institution of this suit.

"5.  That James Cornwell and Catherine Cornwell were husband and wife at and prior to the date of the deed of Yeates to Goodlett.

"6.  That plaintiffs are the only heirs at law of Catherine Cornwell.

"7.  That the value of the monthly rents and profits of the premises is, and since James Cornwell died has been, $10."

Defendant read in evidence a decree of the St. Louis Land Court, rendered at the March term 1862, in case of James Cornwell, plaintiff, against John A. Goodlett, defendant, directing the defendant to convey the property in controversy to the plaintiff, and the deed made in pursuance thereto, and *mesne* conveyances from Cornwell to Wulff.

The circuit court rendered judgment for plaintiff, in conformity to the opinion of this court, when this case was here on former appeal, Cornwell v. Orton, and Same v. Wulff, 126 Mo. 355, and defendant appealed.

## I.

The true construction of the deed above set out determines the rights of the respective parties. Plaintiffs contend that the deed conveyed a fee simple estate to Catherine Cornwell, and that as a fee can not be limited on a fee, the direction to the trustee to convey to James Cornwell, in a default of a disposition by Mrs. Cornwell, by deed or will, being repugnant to the creation of the fee in Mrs. Cornwell, is void.

Defendant claims, first, that the limitation to James Cornwell is good as a conditional limitation, and that although the deed created an equitable fee simple in Mrs. Cornwell, the limitation of a fee to James Cornwell after the termination of the estate of the first taker is valid in equity; and, second, that under the decisions in this State the intention of the grantor must be observed in preference to any mere technical construction, and that to give effect to that intention, the estate of Mrs. Cornwell must be construed as a mere life estate, and that of Mr. Cornwell the fee limited upon the life estate.

Formerly there was a difference between the rules for the construction of wills and deeds. A deed required words of inheritance to pass the fee, while in a will no such formality was necessary. Now under our statute (G. S. 1865, Ch. 108, sec. 2; W. S. 1872, p. 1370, sec. 45; R. S. 1879, sec. 4004; R. S. 1889, secs. 8912 and 8834) they stand on the same footing, and a grant or devise by name carries the fee, without the term "heirs" or words of inheritance. [Green v. Sutton, 50

Mo. l. c. 192, and especially Waddell v. Waddell, 99 Mo. l. c. 345, and cases cited.]

The true rule of construction of deeds and wills is that the intention of the grantor or devisor shall be observed unless it conflicts with some inflexible rule of law.    In Hogan's Heirs v. Welcker, 14 Mo. l. c. 183, NAPTON, J., said: "If a deed admit of two constructions, one of which will support and the other defeat the intent, the construction which will uphold the deed must be adopted, unless some inflexible rule of law interfere."    In Small v. Field, 102 Mo. l. c. 122, SHERWOOD, J., said:   "And in construing wills, the polar-star of construction or exposition of a will, the meaning, the intention of the testator, is never to be lost sight of;   single words, single clauses, will not be considered singly;  but the whole instrument, its general scope and design as gathered from its four corners, will be taken into consideration,  in connection with the surrounding circumstances, when properly admissible, in order that the intention of the testator may, if possible, prevail."   In Chiles v. Bartleson, 21 Mo. 346, LEONARD, J., said:   "The intention of the testator is plain enough;  the whole will must be read together, and effect given to every clause of it, and the words used are to be understood in the sense indicated by the whole instrument."    In Carr v. Dings, 58 Mo. l. c. 406, VORIES, J., said: "By a technical construction of the language used in the will, the bequest to the children might be so limited;  but in construing wills, the intention of the testator is the object to be attained, and in order to ascertain this object, it frequently becomes necessary to look at the whole will, by which it will sometimes become necessary to qualify particular clauses so as to bring them in harmony with the general intention, as the same may be indicated by other clauses."   In Munro v. Collins, 95 Mo. l. c. 37, BRACE, J., said:   "It will not be necessary, in order to determine this question, to consult authorities outside of our own State, and in examining them,

it will be well to remember that courts, in the construction of wills, endeavor never to lose sight of that leading canon: to ascertain, if possible, the true intent and meaning of the testator in any given case, as the same is gathered from the whole context of the will, viewed in the light of the circumstances under which it was made, and aim to give effect to that meaning unless some positive legal principle forbids." In Redman v. Barger, 118 Mo. l. c. 573, BRACE, J., said; "The first and last inquiry in the construction of a will is, what was the intention of the testator. To that intent technical rules must yield, and to it, other canons of legal hermeneutics must be subordinated."

In the light of these principles we approach the crucial question in the case, to wit: did the deed from Yeates to Goodlett vest a fee in Catherine Cornwell, or did it vest in her only a life estate notwithstanding the power of disposal given to her, or did it create a fee in her with a conditional limitation over to her husband.

The previous adjudications in this State can not be harmonized. On the one hand it has been held by this court that if a deed or will gives an absolute power of disposal a fee is created, and as a fee can not be limited upon a fee, a limitation over in such an instrument is void for repugnancy, and that it is only in cases where the absolute power of disposal is qualified by express words limiting the first estate to a life estate that a limitation over is valid or effectual. SCOTT, J., in Rubey v. Barnett, 12 Mo. l. c. 7; SCOTT, J., in Norcum v D'Oench, 17 Mo. 98; BLISS, J., in Green v. Sutton, 50 Mo. l. c. 191, 192, concurred in by WAGNER, J., but ADAMS, J., expressing no opinion; HOUGH, J., in State ex rel. v. Tolson, 73 Mo. l. c. 326; HOUGH, J., in Tremmel v. Kleiboldt, 75 Mo. l. c. 258; HENRY, J., in Wead v. Gray, 78 Mo. 59; BLACK, J., in Cook v. Couch, 100 Mo. 29.

On the other hand it has been held by this court, that it is not necessary that the life estate be created by express

words, but that if an intention of the grantor or devisor, as gathered from the whole instrument, to limit the estate of the first taker to a life estate be evident, the superadded power of disposal in the first taker will not raise the estate to a fee nor defeat the limitation over. LEONARD, J., in Chiles v. Bartleson, 21 Mo. 344; VORIES, J., in Carr v. Dings, 58 Mo. 400; ADAMS, J., in Straat v. Uhrig, 56 Mo. 482; RAY, J., in Russell v. Eubanks, 84 Mo. l. c. 82; RAY, J., in Bean v. Kenmuir, 86 Mo. l. c. 666; RAY, J., in Harbison v. James, 90 Mo. 411; BRACE, J., in Munro v. Collins, 95 Mo. 33; BRACE, J., in Redman v. Barger, 118 Mo. 568; BLACK, J., in Lewis v. Pitman, 101 Mo. 281.

Of the cases last referred to, the following have been cited approvingly in the following cases: Chiles v. Bartleson, 21 Mo. 344, by BLACK, J., in Cook v. Couch, 100 Mo. 29, and in Emmerson v. Hughes, 110 Mo. 630, though they were not followed by the judge in either instance; Carr v. Dings, 58 Mo. 400, by HENRY, J., in Wead v. Gray, 78 Mo. 64, though he distinguishes the two cases; by HENRY, J., in Russell v. Eubanks, 84 Mo. 86; by SHERWOOD, J., in Small v. Field, 102 Mo. l. c. 123; by BRACE, J., in Munro v. Collins, 95 Mo. 33; by BLACK, J., in Lewis v. Pitman, 101 Mo. l. c. 293; by SHERWOOD, J., in Harbison v. James, 90 Mo. 411, and by MACFARLANE, J., in Jarboe v. Hey, 122 Mo. 348.

It is plain therefore that there is a most unusual and deplorable conflict of authority in our own State upon this question. It may fairly be said that the first group of cases follows the lead of Parsons, Chief Justice, in Ide v. Ide, 5 Mass. 500, and of Chancellor Kent, 4 Kent's Com. (14 Ed.) *270; and are in line with Jackson v. Bull, 10 Johns. 19; Jackson v. Robins, 16 Johns. 587; Pells v. Brown, Cro. Jac. 590; Howard v. Carusi, 109 U. S. 725; Van Horne v. Campbell, 100 N. Y. 287; Fisher v. Wister, 154 Pa. St. 65; Ball v. Hancock's Adm'r, 82 Ky. 107; Cushing v. Blake, 30 N. J. Eq. 689; Wright v. Pearson, 1 Eden, *119; Boswell v. Dillon,

1 Drury, 291; Egerton v. Earl of Brownlow, 4 H. L. Cas., star page 210; Witham v. Brooner, 63 Ills. 344; Lynch v. Swayne, 83 Ills. 336; Dean v. Long, 122 Ills. 458; Gifford v. Choate, 100 Mass. 343; Kent v. Morrison, 153 Mass. 137; Combs v. Combs, 67 Md. 11; Hoxsey v. Hoxsey, 37 N. J. Eq. 21; Malson v. Doe on demise of Cooper, 4 Leigh. 408; Riddick v. Cahoon, 4 Rand. 547; Cook v. Walker, 15 Ga. 457.

All of these cases proceed upon the principle that the intention of the grantor or devisor must be observed but that a life estate must be created in express terms or the power of disposal will create a fee, and that an absolute power of disposal may be limited by the creation of a life estate in express terms and in such event the limitation over will be good.

On the contrary the second group of Missouri cases cited are bottomed upon the decision of the Supreme Court of the United States in the case of Smith v. Bell, 6 Peters, 68, where the will gave the property with the absolute right of disposal thereof to the first taker, "remainder of said estate after her death to be for the use of said Jesse Goodwin." No life estate was created by express words. In construing the absolute power of disposal, the court said: "The operation of these words when standing alone can not be questioned. But suppose the testator had added the words 'during her life.' These words would have restrained those which preceded them, and have limited the use and benefit, and the absolute disposal given by the prior words to the use and benefit, and to a disposal for the life of the wife. The words, then, are susceptible of such limitation. It may be imposed on them by other words. . . . If this would be true, provided the restraining words 'for her life' had been added, why may not other equivalent words, others which equally manifest the intent to restrain the estate of the wife to her life, be allowed the same operation. The words 'remainder of the

said estate after her decease to be for the use of said Jesse Goodwin,' are, we think, equivalent words. They manifest with equal clearness the intent to limit the estate given to her, to her life, and ought to have the same effect. They are totally inconsistent with an estate in the wife, which is to endure beyond her life."

The second group of cases are in line with Andrews v. Roye, 12 Rich. (S. C.) 536; Hubbard v. Rawson, 4 Gray, 247; Brant v. Va. C. & I. Co., 93 U. S. 326; Norris v. Beyea, 13 N. Y. 273; Tyson v. Blake, 22 N. Y. 558; Burt v. Herron's Exrs., 66 Pa. St. 400; Dehoney v. Taylor, 79 Ky. 124; Malim v. Keighley, 2 Vesey, Jr., 333; Wright v. Atkyns, 17 Vesey, 255; Hall v. Otis, 71 Me. 326; Fox v. Rumery, 68 Me. 121; Burleigh v. Clough, 52 N. H. 267; Cook v. Ellington, 6 Jones' Eq. 371; Knight v. Knight, 3 Beavan, 148; Prior v. Quackenbush, 29 Ind. 475; Richardson v. Palmer, 38 N. H. 218; Yore v. Yore, 63 Fed. Rep. 645; Kent v. Morrison, 153 Mass. 137.

The first group of cases, like the rule in Shelley's Case, establish an absolute rule of law, while the second group establish a rule of intention or of construction to reach and carry out the grantor's or devisor's intention. The first group profess to respect the will of the grantor or devisor, but require him, by an inflexible rule, to express his intention by limiting the estate of the first taker to a life estate in express terms, employing the identical words of the rule. The second group also respect the intention of the grantor or devisor, but gather that intention from the four corners of the instrument, and regard any equivalent words that clearly express the intention as of as much force as the words "life estate."

Technically and strictly speaking when property is granted or bequeathed to a person with full power to dispose of the same in any manner the grantee or devisee chooses to

employ, it involves the idea of absolute ownership, for the *jus disponendi* implies a fee simple estate. And logically one who has given all he has to another has nothing more to give to a third party. This was the reason underlying the old doctrine that a fee could not be limited on a fee, yet the cases first above grouped admit a relaxation or modification of this original doctrine, so as to permit an absolute gift to be limited to a life estate provided the set phrase "for life" is made to qualify the absolute title.

If this is permissible because it effectuates the intention of the grantor, what logic is there in requiring the grantor to express his intention in set or stereotype language, and in refusing to observe that intention when clearly expressed in equivalent terms? In either event the qualification imposed on the absolute ownership (or power of disposal which is the equivalent of absolute ownership) by limiting the estate of the first taker to one for life, must be construed that he has power to dispose of the estate only during his life, but that after his death the remainder or what is left is to go to the expectant owner. And if this is true, what difference does it make in what words this intention is expressed? In both cases the old, inflexible rule is equally softened, modified and made more elastic. In our day there is not the undefined apprehension about tenures that formerly disturbed the placid dreams of our English predecessors in the law. In all other respects our laws, as to pleading and practice, as to proceedings and remedies and as to interpretation and construction, have been softened and broadened and made plainer and simpler, and it is hard to give a reason why we should tread with leaden heel with respect to conveyances, or try to hamper our real estate transactions with gauges and measures which do not fit our conditions.

If the maxims of interpretation first hereinbefore referred to are applied, the second group of cases will be found

to be in consonance with them. If the latest enunciations of this court are to be observed as the law, the second group of cases must be followed. If we are to be governed by the rules of *stare decisis*, we are hopelessly lost unless we treat. the second group as overruling the first group. It is a most singular circumstance that none of these conflicting decisions have noticed this conflict in our State, or in terms overruled the prior inconsistent cases. It can not be said that these decisions have established a rule of property in our State unless the second group, being the later utterances, have done so. The wonder is that greater confusion has not already arisen. As if to mark more plainly the discrepancy in this regard, this court has had before it two cases wherein the deeds under consideration were identical with the deed involved in this case, and in the first case, Straat v. Uhrig, 56 Mo. 482, ADAMS, J., held that it created a life estate only in the first taker, and that the fee passed to the remainderman, while in the second, Tremmel v. Kleiboldt, 75 Mo. 255, HOUGH, J., held that it vested a fee simple estate in the first taker, and that the limitation over was void, for repugnancy.

It is a noteworthy fact that the last of the first group of cases, Cook v. Couch, 100 Mo. 29, was decided by BLACK, J., in which he cited and commented upon the prior cases, without attempting to reconcile them or overrule the conflicting ones, and decided the case in hand according to the doctrine of the first group, and that the next time the question was presented to this court, Lewis v. Pitman, 101 Mo. 281, BLACK, J., wrote the opinion of the court, again referred to both classes of cases, followed the latter or second group of cases, and practically, though not expressly, overruled those of the first group, and said: "If we follow the common-sense reading of the will from first to last, it seems to us that there is no difficulty in discovering its true purpose and meaning as to the personal property, and that is this:

The testator gives all of it to his wife with the right and power in her to carry on the manufacturing business, or to dispose of the same, as to her may seem best, with the further qualification that whatever she has remaining at her death shall go to the children. Thus interpreted does the will violate any rule of law? It is claimed by the appellant that it does, and for the reason that where there is a devise of property, with an absolute power of disposal in the first taker, a subsequent limitation over is void. We shall not review the many authorities cited in support of this proposition of law. It may be conceded that a devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. [Green v. Sutton, 50 Mo. 186.] But there is a wide difference between that class of cases and those where there is a devise for life with a power of disposition. Where an express life-estate is created, an added power of disposition does not convert the estate into a fee. [Rubey v. Barnett, 12 Mo. 3; Gregory v. Cowgill, 19 Mo. 416; Reinders v. Koppelmann, 68 Mo. 482.] Nor is it necessary that the life-estate should be created in express terms. If it is the clear intention from the whole will that the first taker is to have but a life-estate, then the added power of disposition will not convert the estate into one of absolute ownership. Thus in the case of Smith v. Bell, 6 Peters, 68, the testator gave to his wife all of his personal estate, 'to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin.' It was held the wife took but a life-estate, and that for the reason that the will as a whole disclosed a clear intent to make provision for the wife and a future provision for the son. In Wead v. Gray, 78 Mo. 62, it was said that Smith v. Bell is an exceptional case and has not been followed in this State. Smith v. Bell was cited with approval and liberal quotations made from it in the recent case of Harbison v. James, 90 Mo. 411. In

that case the testator gave all of his property, real and personal, to his wife with 'the right to sell and reinvest, as she may desire, any part of the same, for her separate use and benefit, and at her death I desire that any portion of my estate remaining undisposed of shall go to my three daughters.' There was no express life-estate created in the wife in that case, and yet it was held, notwithstanding the power of disposition, that she had but a life-estate.. The intention of the testator so clearly expressed was allowed to prevail. Although a life-estate is not created in express terms, still an added power of disposition will not convert it into an absolute estate, if upon a consideration of the whole will it is clear that the testator intended to give a life-estate only. This is the deduction to be made from Smith v. Bell and Harbison v. James, and they have the support of other well considered cases. [Giles v. Little, 104 U. S. 291; Siegwald v. Siegwald, 37 Ill. 435; Green v. Hewitt, 97 Ill. 113.] If the first taker is to have but a life-estate, then it matters not whether this appear from express words creating a life-estate or from a consideration of the whole will. What difference can it make in which form the testator expresses his intention, so that it is clearly expressed? There may be and are many cases where the added power of disposition will turn the scale, but if it is the intention of the testator to give the first taker a life-estate only, notwithstanding the power of disposition, then that intention ought to prevail. This is the common-sense view of the matter, and it has the support of well considered judgments." The court was then composed of RAY, C. J., SHERWOOD, BLACK, BRACE and BARCLAY, JJ., and they all concurred.

It is patent therefore that if the doctrine of the first group of cases had been followed, the conclusion reached by the learned judge would have been exactly the reverse, and it is manifest that he had both groups of cases in his mind, for he referred to cases belonging to each, and that upon fuller and maturer consideration he concluded that the better rule,

founded upon the better reason and logic, was that announced by the second group of cases, and so he followed the "common-sense view of the matter," effectuated the intention of the devisor, and discarded the old, inflexible rule which measured every man's intentions by a set phrase which was formerly held to be the only words in the English language a party could employ to effectively express his intention.

This case must therefore be regarded as settling the law in this State up to 1890, when it was decided.   Afterwards in 1893, the question came again before this court in Redman v. Barger, 118 Mo. 568, and Brace, J., delivering the opinion of the court, cited and approved Lewis v. Pitman, 101 Mo. 281; Munro v. Collins, 95 Mo. 33; Harbison v. James, 90 Mo. 411; Russell v. Eubanks, 84 Mo. 83; Bean v. Kenmuir, 86 Mo. 666, and Smith v. Bell, 6 Pet. 68.   This decision was concurred in by Black, P. J., Barclay and Macfarlane, JJ., being all the judges of Division No. 1.

It follows that Lewis v. Pitman is still the law in this State, unless it has been overruled by Cornwell v. Orton, 126 Mo. 355.   That case stands squarely upon the doctrine of the first group of cases, and follows the old iron-clad rules of interpretation.   It refers to Lewis v. Pitman, Munro v. Collins, Harbison v. James, and Redman v. Barger, but contains no suspicion of intention to overrule them or to distinguish them.   It simply follows the earlier cases and subscribes to the harsh rule upon which they were bottomed.

The case at bar involves the same deed that was construed in Cornwell v. Orton, *supra*, and this case was decided on former appeal, by Division No. 2 of this court, at the same time and upon the faith of the Orton case.   It is here a second time before the Court in Banc, and we are asked to review and reverse the decision on former appeal.

If we adhere to the decision in Cornwell v. Orton, *supra*, it is our plain duty, in the condition of the law in our State as hereinbefore pointed out, to overrule Lewis v. Pitman, and

its kindred cases.   On the other hand, if we reverse Cornwell v. Orton, it is our duty to ourselves and to the bench and bar of the State to expressly overrule Green v. Sutton and its kindred cases, for it is not to be tolerated that two distinct and diametrically opposed lines of decisions on the same principle shall be allowed to stand.

It can not be denied that the rigidity and inflexibility of the common law rule that a fee could not be limited upon a fee and that an absolute power of disposal in the first taker, created a fee in him and made the limitation over void for repugnancy, has been relaxed in America, and that all the cases in both groups, and the cases from other States upon the same subject, cited in support of each group, concede that words which would create an absolute fee simple estate if standing by themselves, may be qualified, or limited, by other words in the same instrument, so as to create only a life-estate in the first taker, and vest a fee in remainder.   The only practical difference between the two classes is what words shall be deemed sufficient to so limit what would otherwise be an absolute fee.

If the power to qualify or limit at all be conceded—which the common law denied—as it is conceded by all the American cases  and text writers, and if the purpose to be thus subserved is the effectuating of the grantor's or devisor's intention, it logically follows that it can make no difference what the words of qualification or limitation employed may be, so long as they clearly express the intention of the grantor or devisor, and that it is a solecism to concede the right to qualify but to refuse to enforce the intention unless it is couched in terms arbitrarily required by the courts.

If the opinion in Lewis v. Pitman, *supra*, had been written for the case at bar it could not have fit it more completely than it does.   All of the elements present and decided in that case are involved here.   We have here the conveyance with absolute power of disposal, whether by deed or will, and

not qualified by any express life-estate, but superadded a clear intention of the grantor that whatever is left of the estate after the first taker's death, or undisposed of by her, was to vest in James Cornwell; manifesting, therefore, most conclusively a desire and intention to provide for Mrs. Cornwell during her life, and after her death for Mr. Cornwell. These are clearly equivalent words and are just as effectual as if an express life-estate had been granted to Mrs. Cornwell with a remainder in fee to Mr. Cornwell.

The reason upon which the common law rule rested that an absolute power of disposal created a fee and made the limitation over void for repugnancy, was, that it was thus placed in the power of the first taker to cut off the limitation by disposing of the estate; and the reason underlying the modern, American doctrine that where the absolute fee is qualified by words creating only a life-estate in the first taker, is, that the first taker's power to dispose must be construed to be limited to the right he had in the estate—the life-estate; and that if he disposed of his life interest, the remainder would vest immediately upon his death in the person for whom the grantor or devisor intended to provide, and so it is not within the power of the first taker to defeat the remainder, and hence there is no repugnancy, and therefore the principle upon which the common law rule rested, is not violated.

The only remaining question then is how shall this intention be voiced in words—by the words, "for life only," or by equivalent words, pregnant with the same idea and expressive of the same intention.

One theory is purely arbitrary and technical; the other is common sense. Between the two, all reason and logic, all precedents for the construction of all laws, contracts and dealings of mankind, is on the side of the rule laid down in Lewis v. Pitman, *supra*, and the second group of cases. This being true, that case and its kindred cases should be hereafter

regarded as the law in our State, and Green v. Sutton, and its kindred cases should no longer be followed.

It follows that the deed to Goodlett was a conveyance in trust for Mrs. Catherine Cornwell for life, with power in her to dispose of her life interest, and a remainder in fee to James Cornwell. It also follows, that it was not a mere naked, dry trust, and that the use was not executed in Mrs. Cornwell under the statute of uses, even if the statute of uses applies to the second use, which Scott J., in Guest v. Farley, 19 Mo. 151, held the statute of uses never was intended to do, saying: "The statute only executes the first use. A use upon a use is no estate in law; it is only a trust, a creature of courts of equity."

The judgment of the circuit court should therefore be reversed. Sherwood and Brace, JJ., concur; Gantt, C. J., Burgess, Robinson and Williams, JJ., dissent.